J. R. FARRAR v. C. W. BEEMAN ET AL.

(Case No. 1945.)

1. JURISDICTION.— When suit was brought in the district court upon a contract upon which (aside from a claim for damages on account of its alleged breach) there were due less than $500, according to the averments of the petition, but in addition thereto $3,000 were claimed as damages resulting from a breach of the contract, it was held that a plea to the jurisdiction on account of the amount in controversy was properly overruled.

2. STIPULATED DAMAGES.— Courts generally are inclined to treat a fixed sum
    designated as damages in a contract as a penalty, and to hold that the real
    damages are to be inquired into.
3. SAME.— In a contract for the delivery of cattle it was stipulated that cattle of
    designated brands, belonging to the seller, should be delivered in a specified
    time for an agreed sum.   Three thousand dollars was advanced by the pur-
    chaser on the contract before delivery of cattle.   The contract stipulated
    that, if the purchaser failed or refused " to accept and receive said cattle at
    the time and place appointed, then the $3,000 paid as above shall be forfeited
    and held " by the seller.   A large proportion of the cattle contracted for
    were received, after which the purchaser refused to receive more.  *Held*, that
    a total and not a partial failure to receive the cattle was necessary to entitle
    the seller to recover the $3,000 as fixed damages.
4. SAME.— If a partial breach of contract occurs, the sum fixed as liquidated
    damages is, as to that breach, only penalty, and damages will be given on
    proof without regard to it as a standard by which to estimate damage.
    (Following Shute *v.* Taylor, 5 Metcalf, 61.)

APPEAL from Navarro.  Tried below before the Hon. L. D.
Bradley.

C. W. Beeman, S. A. Beeman and J. A. Beeman brought this suit
against the appellant J. R. Farrar upon a contract which was en-
tered into by the Beemans and the Tecalote Stock Company of
New Mexico, dated March 7, 1882, and executed in duplicate.   The
contract was assigned by the Tecalote Stock Company to James
Farrar with the consent of the Beemans, and it is as follows, viz.:

THE STATE OF TEXAS,     )
     County of Navarro.  )

Know all men by these presents, that we, C. W. Beeman, of said
Navarro county, on the one part, representing himself and S. A.
Beeman and J. A. Beeman, by the power of attorney of the said S.
A. Beeman and J. A. Beeman, and the Tecalote Stock Company of
New Mexico on the other part, do hereby enter into the following
agreement:

I, C. W. Beeman, representing myself and the said S. A. Beeman
and J. A. Beeman, on my part do hereby agree and bind myself to
deliver at my stock pen in Navarro county to the said Tecalote
Stock Company, or their agent, M. Lynch, on, or before if practi-
cable, the 22d day of May, 1882, one thousand head of stock cattle.
And it is agreed and understood that I am to include in said num-
ber of cattle all that certain stock of cattle branded Z, also Z on the
side and O on the neck, also 9 B.   And if the number of cattle of
the said brands should exceed one thousand head, the excess shall
also be included; and further, if I should fail to find and gather as
many as one thousand head of cattle of said brands, then I am to

make up and deliver the deficit in number of other stock of the same or as good average as to quality as the stock of said brands.

It is also specially understood that all the three-year-old steers, and steers over that age, are reserved and are not included in this contract. There are also reserved from sale and the operation of this contract fifteen mother cows and one bull of the Z and Z with O on neck brands. There are also reserved from the operation of this contract some few old cows which have heretofore been given by S. A. Beeman to her daughters, of the 9 B brand.

The Tecalote Stock Company, acting by their agent M. Lynch, agrees and binds itself to pay to C. W. Beeman $11 per head for said cattle when delivered, and on this day do advance to said C. W. Beeman on said cattle the sum of $3,000, which is to be credited on the total amount of the price of said cattle, and agree also to pay the price of $11 each for two saddle horses which the said C. W. Beeman agrees to deliver to said Tecalote Cattle Company at the same time, being two of the seven horses now owned by J. A. Beeman.

And it is further agreed between the parties that the Tecalote Stock Company shall designate some man who shall be an available and active cattle drover or herdsman, who shall be employed at reasonable wages by the said C. W. Beeman, who shall assist the said Beeman in gathering and delivering the said stock.

It is understood that the Tecalote Stock Company will put their road brand on the cattle at the place of delivery, and will pay for them according to the tallies kept by the parties as the same are road-branded.

It is agreed that in the event that the Tecalote Stock Company shall fail or refuse to accept and receive said cattle at the time and place appointed, then the $3,000 paid as above stated shall be forfeited and held by said C. W. Beeman. And it is further agreed that in the event the said C. W. Beeman shall fail or refuse to deliver said cattle, then the said Tecalote Stock Company are to gather the stock of said brands at the expense of said C. W. Beeman, and after gathered and road-branded to pay the price of $11 per head less the expense of gathering and herding, and damages to amount of $3,000.

This contract is to become of full force and effect as soon as the Tecalote Stock Company shall deposit to the credit of C. W. Beeman in the bank of Jester Bros., Corsicana, Texas, the said sum of $3,000.

The plaintiffs alleged that the contract went into effect upon the

terms specified, viz., that the Tecalote Company should pay at the time when it was entered into, to the plaintiffs, $3,000, to be applied as a credit on the sale, and to be treated and retained as a forfeit in case the company failed to accept and receive the cattle when tendered according to the provisions of the contract. The petition further alleged that the plaintiffs delivered to the appellant Farrar four hundred and eighty-one head of the cattle contracted for in pursuance of the contract, for which he paid them the sum of $2,000; that the amount due for said four hundred and eighty-one head of cattle at the price stipulated — $11 per head — amounted to $5,291, thus leaving a balance due on said four hundred and eighty-one head of cattle of $3,291. Plaintiffs alleged that Farrar refused to accept the remainder of the cattle contracted for, although they were ready to deliver them and offered to do so, whereby he forfeited the $3,000 which plaintiffs had received upon the terms above stated under the contract.

The plaintiffs prayed for judgment for their said demand and for general relief.

The answer of appellant consisted of a general demurrer and five special exceptions as follows:

1. That appellees failed to allege any breach of the contract sued on.

2. That appellees did not allege the performance of the conditions precedent to the recovery of the forfeiture claimed, and showed no reason for holding the $3,000 as liquidated damages.

3. That appellees did not allege facts sufficient upon which to base a recovery of the forfeiture claimed.

4. That there was no tender of the cattle alleged.

5. That the court was without jurisdiction, because the petition shows only $291 due. Appellant also pleaded in reconvention for damages, alleging that appellees had failed to comply with the contract, whereby appellant was damaged.

Verdict for appellee for $2,168.33.

*Simpkins, Simpkins & Neblett*, for appellant, that the sum designated ($3,000) was a penalty and not stipulated damages, cited: Lampman *v.* Cochran, 16 N. Y., 275; Shute *v.* Taylor, 5 Metc., 61; Taylor *v.* Marcella, 1 Wood, 302; Hoagland *v.* Segur, 38 N. Y., 230; Berry *v.* Wisdom, 3 Ohio St., 241; Moody *v.* Culver, 18 Barb., 336; 1 Pomeroy's Eq., 444; Williams *v.* Green, 14 Ark., 315, 322; Central Law Jour., vol. 19, No. 16, p. 304.

There could be but one act of performance, citing: 2 Pars. on

Cont., 31, 164; Clark v. Baker, 5 Metc., 452; Robert v. Beatty, 2 Penn., 63.

The $3,000 could not be recovered for a partial failure: Jamison v. Gray, 29 Ia., 537; Lee v. Overstreet, 44 Ga., 507; Shreve v. Brereton, 51 Penn. St. (1 P. F. Smith), 171; Hamaker v. Schroers, 49 Mo.; Lyman v. Babcock, 40 Wis., 516; 42 id., 679.

A partial performance, accepted, left appellee to his remedy for damages, depending on proof and not fixed damages, citing: Shute v. Taylor, 5 Metc., 61; Mason v. Decker, 72 N. Y. (27 Sick.), 595; Duston v. McAndrew, 44 N. Y. (5 Hand), 72; Booth v. Tyson, 15 Verm., 515; 2 Jones (N. C.), 403; Bowker v. Hoyt, 18 Pick., 555; 2 Jones (N. C.), 454; Miner v. Bradley, 22 Pick., 457; Taylor v. Marcella, 1 Wood, 302; Roberts v. Beatty, 2 Penn., 69.

No briefs on file for appellees.

WALKER, P. J. COM. APP.— The plaintiffs sued, in effect, for damages for the failure on the part of the defendant to receive the residue of the cattle which, under the contract, he had agreed to take, and for the amount left unpaid for those cattle which he had received. The contract itself was set forth in the petition, together with the facts which had transpired under it, and the plaintiffs in their petition construed them as entitling them to the full amount of the stipulated damages, $3,000; and they prayed for judgment in accordance with that interpretation, and also for general relief. Their claim as thus asserted was for an amount within the jurisdiction of the district court, and the court did not err in overruling the defendant's exception to the jurisdiction of that court. The exception to the jurisdiction proceeds upon the idea that if the plaintiffs are not entitled under the facts alleged to maintain the claim set up in the petition for $3,000, as being forfeited upon the assumption that the same may properly be appropriated by them as forfeited liquidated damages which has been already paid into their hands, that they seek to enforce no other cause of action in the petition except for $291 as unpaid purchase money, and that that sum not being within the jurisdiction of the district court, that court would not have jurisdiction of the case. This view is, we think, more specious than strictly consistent with a correct analysis of the character of the suit.

The plaintiffs evidently are seeking to recover damages for the default of the defendant in failing to receive all the cattle contracted for, instead of receiving a part as he did, and refusing to accept the remainder.

For the cattle they had delivered they received at the time of their delivery $2,000, which with the $3,000 paid on account when the contract was entered into, left on that transaction due the plaintiffs only $291; but it was not for that sum alone they sue, but they allege that they are entitled to $3,000 as forfeited stipulated damages, which being already in their hands they need not ask a judgment for; but under that view of their right to compensation as damages, the defendant would be indebted to them on account of the cattle which were delivered to him in the sum of $3,000, on an estimate of the value of said cattle at $11 per head. This was in effect the statement by the plaintiffs of their account against the defendant, and if, as a matter of law, it appears from the facts thus alleged that they are not entitled to claim the $3,000 in their hands as a forfeit, but that it must be taken as a credit on the transaction of sale and delivery of the cattle, it is apparent, we think, that the plaintiffs seek nevertheless under their petition to recover damages to the amount of $3,000, or such sum as they may be entitled to recover under the evidence. The case would not have been different in principle if the plaintiffs in their petition had credited the $3,000 on the sale and delivery transaction, and had prayed judgment against defendant for that sum as liquidated damages due them under the contract.

The plaintiffs, declaring upon a breach of the contract, sue for damages arising therefrom, and they claim under their construction that they are entitled to the benefit of the clause in the contract providing that $3,000 shall be deemed the conventional and agreed sum due them as damages on the happening of the contingency for which they sue, but they do none the less sue for damages upon the facts alleged even though it may transpire that they be not entitled under the law to that measure of damages to which they deem themselves entitled. The court will grant such relief under the prayer for general relief as the plaintiffs may show themselves to be entitled. See Sayles' Pleadings, sec. 70, and authorities there cited. See Hardy v. De Leon, 5 Tex., 212; Nash v. George, 6 Tex., 234; Wintz v. Morrison, 17 Tex., 372; 18 Tex., 794; Smith v. Clopton, 4 Tex., 109; Mitchell v. Sheppard, 13 Tex., 484.

We are of opinion, therefore, that the court did not err in overruling the defendant's general demurrer, nor the exception that the court was without jurisdiction.

The clause in the contract providing for stipulated damages had reference, we think, to a total and not a partial failure of the parties to it, respectively, to comply with their undertakings. "Our

courts," says Sedgwick, Meas. Dam. [412], " will be found generally inclined to treat a fixed sum as a penalty, and to hold that the real damages are to be inquired into." Whether the contract contemplates in its provisions a penalty fixed by the terms of it, or whether they are intended to fix a specified amount as liquidated damages, is the proper subject of construction by the court. See 2 Sedg. M. of Dam. (7th ed.), note (a), p. 250; 1 Taylor, Ev., 56. In construing this contract in that respect, the subject-matter contained in it indicates the intention of the parties, and the interpretation of their meaning is not embarrassed, as cases of the kind often are, by the express use of technical expressions relating to the matter, as, for instance, where it is specified in terms that the amount indicated is "stipulated damages," or fixed "as a penalty," and the like. Whilst the use of the term "stipulated damages" does not necessarily require the contract to be construed as establishing the damages as fixed and stipulated damages, and therefore to control as the measure of damages between the parties, such terms nevertheless complicate more or less the question of construction involved. Here, however, we think it clear upon the leading canon of interpretation for contracts,— the intent of the parties,— that they contemplated the stipulated forfeiture as applying only to the case of a total and not a partial failure.

"The subject-matter of the contract and the intention of the parties are the controlling guides. . . . If the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term liquidated damages will not prevent the courts from inquiring into the actual injury sustained, and doing justice between the parties." 2 Sedg. on Meas. Dam., 215 (7th ed.).

It cannot reasonably be supposed from the terms of this contract, for instance, that it was in contemplation of the parties that in case the Beemans had delivered to the defendant all the cattle they had agreed to deliver, save only a dozen or fifty head, that the defendant would be authorized to gather from his herds a sufficient number to supply the deficit, and, according to the letter of the contract, to satisfy damages to the amount of $3,000. Similar application may be made by reversing the operation of the contract, in case of a delivery of the bulk of the cattle contracted for, and a refusal to accept a merely trifling residue of the cattle. It cannot be supposed that in such cases as are supposed, and which might well occur without fault or fraud on either part, that it was the intention that such defaults as these should operate to forfeit $3,000. See Watts v. Shep-

pard, 2 Ala., 445, 446, 447. We think the forfeiture applicable only to a total default, and not certainly where both parties acquiesced and concurred in executing the contract according to its terms to the extent that it is shown by the pleading and the evidence they did. The proposition is stated in a note in 2 Sedgw. Meas. Dam., 213, that although the parties have agreed upon a sum as liquidated damages, yet if it appears that the agreement contemplated only a total failure to perform, and there has been a partial performance by defendant, he is liable only for the damages resulting from the partial failure. Citing Lampman v. Cochran, 16 N. Y., 275; 19 Barb. (N. Y.), 388; Shute v. Taylor, 5 Metc., 61.

It seems that a stated sum made payable as stipulated damages for a total failure to comply with the contract cannot, by construction, be applied to any infraction after acceptance of part performance, as was done by the plaintiffs in this case. 1 Sutherland on Dam., 528, and authorities there cited. In case of such a stipulation, the stated sum is only recoverable upon the happening of the very event mentioned in the contract; in this case such event would be the total failure of the defendant to accept or receive the cattle.

The court, in its charge, established as a matter of law that the measure of damage was $3 per head for the remainder of the cattle which were not delivered, which is assigned as error. The contract called for one thousand head of cattle; the forfeit agreed on being $3,000, the court evidently acted upon the opinion that the ratio of $3 per head was the measure of damage for a partial failure to accept as determined by the parties in their contract respecting the amount of liquidated damages. The view thus taken, it seems, is suggested, if not supported, by authority; but the rule, it appears, is variously applied in different cases. Sutherland says: "If a partial breach occurs, it has sometimes been said the stated sum is, as to that breach, only penalty, and damages are given on proof without regard to it (citing Shute v. Taylor, 5 Metc., 61, opinion by Judge Shaw). In other instances, it has been held that the damages for a partial breach are a constituent of the sum stipulated for an entire failure to perform." Citing Watts v. Sheppard, 2 Ala., 425, and making reference, also, to Chase v. Allen, 13 Gray (Mass.), 42. The true general rule on this subject, and most consistent with principle and reason, is that first above stated, and which the case of Shute v. Taylor, supra, recognizes as correct. Indeed, it seems to us, from an examination of the cases of Watts v. Sheppard and Chase v. Allen, that they do not necessarily conflict with the rule in Shute v. Taylor, nor question its general correctness. The one

or the other rule might with propriety be applied accordingly as the peculiar facts of the given case might require in order to give effect to the intentions of the parties and to reach the justice of the case. In the case of Watts *v.* Sheppard, for instance, it appeared that the stipulated damages provided for embraced what was deemed probably by the parties to be the value of the entire body of the land, the title for which was contracted for. In such state of case damages for failure to convey a part of it might well be deemed to be the stipulated amount agreed on as damages for a total failure, less the value of the part of the land which the obligor had conveyed and which the obligee had accepted. The case of Chase *v.* Allen rests upon a peculiar state of facts which would suggest the application of the rule as there followed as being in fact but giving the true effect to the contract of the parties, in view of the nature of its subject-matter and the nature of its provisions.

But where the gross amount stipulated as damages for a total breach does not in the nature of the subject of the contract bear any particular relation to the proper amount of damage to be sustained in the various cases to be supposed in case of a partial failure, there could not exist any reason for adopting a rule of mere ratio and proportion founded on said gross sum as a basis. The application of the rule in that manner would not correspond with any purpose or intention which either party probably had in mind when making the contract, and would, if enforced, afford an arbitrary standard of compensation bearing no necessary relation to the actual damage sustained; in some instances, far exceeding the damage sustained, and in others, falling far short of proper remuneration.

For the error in the charge of the court which has been discussed, we think the judgment ought to be reversed.

We do not consider it profitable to the parties concerned to discuss further the various assignments of error presented in the brief of appellant's counsel, in view, especially, of the changed features which the case will probably assume on another trial.

We recommend that the judgment be reversed and the cause remanded.

                                        REVERSED AND REMANDED.

[Opinion adopted January 30, 1885.]