CASE 41.—ACTION BY THE OWENSBORO SEATING & CABINET CO. AGAINST ELMER MILLER TO ENFORCE A SUBSCRIPTION OF STOCK IN A CORPORATION. November 11.

# Owensboro Seating & Cabinet Co. v. Miller

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment of dismissal. Plaintiff appeals.—Affirmed.

1.  Corporations—Stock—Subscription—Discharge of Liability.— Defendant subscribed for shares in a Wisconsin corporation,

Owensboro Seating & Cabinet Co. v. Miller.

to be organized with a capital stock of $250,000, with the understanding that the corporate plant would be located in a certain city, and attended the first meeting of those interested, but left the meeting when he learned that the plant was not to be located in that place, and those remaining adopted a resolution making the capital stock $250,000, to be divided into 2,500 shares, 1,500 common and 1,000 preferred stock, and at the next meeting, which defendant diu not attend, it was agreed to dissolve the Wisconsin corporation and organize a Kentucky corporation in its place, the latter corporation having an authorized capital stock of $200,-000, divided into 2,000 shares, 600 of which might be 7 per cent preferred stock, with priority of dividends, and the same number 6 per cent preferred. Held, That defendant's liability as a subscriber to the Wisconsin corporation terminated with its dissolution, so that the Kentucky corporation could not enforce his subscription, and he was not estopped from denying his liability thereon.

2   orporations—Stock—Subscriptions—Right of Subscribers—A mere subscriber for capital stock, before its issue or payment therefor, has no right to vote, and can not participate in the management of the corporation.

3.   Corporations—Stock—Subscriptions—Release.—A material alteration in a contract of subscription for stock without the consent of the subscriber will release his obligation, so that one subscribing under an understanding as to the amount and nature of the capital stock, the corporate business, or the location of its organization, is not liable upon his subscription if the corporation, when organized, is different in those respects from that contemplated by the contract of subscription, in the absence of facts estopping him from denying his liability.

C. W. WELLS and HAYS & JOHNSON for appellant.

SYNOPSIS AND LIST OF AUTHORITIES.

1. Statement of facts and questions presented.

2. The appellant corporation preserved its identity notwithstanding its reorganization. (30 Am. & Eng. Ency. of Law (2nd Ed), p. 826; Graham v. Boston, &c., Railroad Co., 118 U. S., 116; 30 Law Ed. 196.)

3. The amount required to make the subscription binding was obtained.

(a) Subscription by corporation can not be attacked as ultra vires by a stranger to the corporation making the subscription.

(20 Am. & Eng. Ency. of Law (2nd Ed.), p. 80; McCoy v. World's Columbian Exposition, 78 Am. St. Rep. 288; Phillips v. Covington & Cincinnati Bridge Co., Met. 219, distinguished.)

(b) Subscriptions paid in property suitable for the corporation are valid. (Phillips v. Covington & Cincinnati Bridge Co., supra.)

(c) The subscription of J. H. Soery was valid to the extent of $20,000.00, having been paid in property of that value, and his insolvency can not affect its validity. (Phillips v. Covington & Concinnati Bridge Co., supra.)

(d) The unquestioned subscription of R. O. Evans makes the total far exceed the required amount, irrespective of · questions as to other subscriptions.

(e) The appellee is estopped to deny that .the required amount of subscriptions was obtained.

4. The defense of fraudulent misrepresentation is without merit.

(a) The allegations of fraud insufficient.

(b) Misrepresentations alleged to have been made by J. H. Soery could not bind the appellant. (Oldham v. Mt. Sterling Improvement Co., 103 Ky. 529.)  ˙

(c) The allegations of fraud not sustained by the evidence.

(d) Soery's subscription was made after that of appellee, and therefore could not have been a fraud upon the· latter.

(e) Appellee estopped to raise the question of fraud.


C. S. WALKER for appellee.


J. D. ATCHESON of counsel.


## SYNOPSIS.

1. A subscription, or agreement to subscribe, to the capital stock of a corporation, upon condition that not less than a certain amount is subscribed, has binding force only upon the obtension of the required amount in valid subscriptions. (Jones v. Johnson, 86 Ky. 530, 6 S. W. 585; Phillips v. Covington & C. Bridge Co., 59 Ky. (2 Met.) 219; McMillam v. Maysville & L. R. Co., 54 Ky. (15 B. Mon.) 218; Anderson v. West Kentucny College, 10 Ky. Law Rep. 725.)

2. Where a corporation is formed, or is authorized to issue and put on the market for sale its capital stock, a subscription for a certain number of shares at an agreed .price, payable twenty-five per cent cash and the balance in one, two and three months, can not be. recovered on by the corporation without a delivery or tender of the stock to the subscriber, and, in such case, the remedy of the corporation is an action for the damage sustained by it resulting from the failure of the subscriber to. comply with

his contract. ( Mt. Sterling Coalroad Co. v. Little, 14 Bush 429, 431, 432; Bullock v. Falmouth & Chipman Turnpike Road Co., 85 Ky. 184, 190, 3 S. W. 131; Twin Creek & Colemansville Turnpike Road Co. v. Lancaster, 79 Ky. 552.)

3. Under the ·Wisconsin statute, corporate existence becomes complete when a verified copy of its articles and certificates of the Secretary of State, showing the date. when filed and accepted. by him, are left, within a given time, for record with the register of deeds of the county in which the corporation is located. Then the corporation, in the language of the statute, comes into "legal existence," and has authority to issue its capital stock, and put it upon the market for sale. (Wisconsin Stats., 1898, section 1772—1, 2, 3, 4, 5, 6, 7 section 1773.

A corporation exists from the time its articles are filed for record as prescribed by the governing statute, at which time it can enter upon the object of its creation. (I Thompson Corp., sections 217, 219.)

An exhibit will not make good a defective pleading, but will be considered against the pleader filing it. Com. v. The Licking, &c., Asso., 118 Ky. 798, 26 Ky. Law Rep. 734.)

4. Where the subscription is upon condition and in the .form of a proposal b.ſ the subscriber, it must be accepted by the corporation, in existence or when it comes into existence, through its board of directors, and the fact. of acceptance must be communicated to him. (I Thomp. Corp., sections 1177, 1178; 2 Id., section 1328; Goff v. Winchester College, 6 Bush, 443, 446, 447.)

5. The R. O. Evans Company, incorporated under the statute of Kentucky, is not a continuance of the corporate existence of the R. O. Evans Company incorporated under the statute of Wisconsin; but is a new, independent and distinct corporation. (Commonwealth v. Cain, 14 Bush 525, 534, 535; Commonwealth v. L. V. B. & L. Asso., &c., 26 Ky. Law Rep. 734; Senn v. Levy, 23 Ky. Law Rep. 662.)

6. It is a complete defense to an action on a subscription to the capital stock of a corporation that, at the time of the subscription, the capital stock was fixed at $250,000, and that the corporation was subsequently organized with a capital stock .of $200,000 without the consent of the subscriber. (Newport Cotton Mill Co. v. Mims (Tenn.), 53 S. W. 737, 738, 739; 1 Cook Corp. (5th Ed.), section 194, p. 384, n.; 1 Thomp. Corp., sections 1274, 1275, 1276.)

7. In the absence of estoppel, a subscriber can not be held on his subscription where the corporation organized under a general law, which required that the amount of its capital stock shall be stated in its. articles, enters into active business with less capital

than the amount therein stated.  (Haskell v. Worthington (94 Mo. 560), 7 S. W. 486.)

8. A subscription to the capital stock of a corporation to be incorporated under the provisions of chapter 32, article 1, of the Kentucky Statutes does not become enforceable until the subscriber has signed and acknowledged the articles before an "officer authorized to take acknowledgments to deeds." Ky. Stats., section 538, 539-5, 540, 543; Gen. Stats., chapter 56, section 3; Kent's Admr. v. Deposits Bank, 91 Ky. 70, 14 S. W. 963; Bullock v. Falmouth & Chipman Hall Turnpike Road Co., 85 Ky. 184, 3 S. W. 129; 1 Thomp. Corp. sections 1157, 1158; Mt. Carmel Tel. Co. v. The Mt. Carmel, &c., Tel. Co., 27 Ky. Law Rep. 30; Coppage v. Hutton (Ind.), 7 L. R. A. 591; Sedalia, &c., R. Co. v. Wilkerson, 83 Mo. 242.)

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant company, plaintiff below, sought to recover of appellee, defendant below, $2,500 on the following subscription: "We, the undersigned, hereby subscribe for the number of shares of stock in the R. O. Evans Company, and of the kind that is set opposite our names, and we agree to pay for the same twenty-five per cent cash, balance in one, two and three months, at one hundred dollars per share. This subscription not to be binding unless $75,000.00 or more is subscribed." In October, 1903, the appellee subscribed for 25 shares of stock, but the subscription does not describe the kind of stock. The R. O. Evans Company at the time appellee subscribed for the stock was a Wisconsin corporation, organized under the laws of that State. In 1904 the Wisconsin corporation was dissolved, and a Kentucky corporation, styled the "R. O. Evans Company" was organized. The articles of incorporation of the Kentucky corporation declared that it was the object and purpose of the corporation to acquire and hold all the property and

privileges acquired under the Wisconsin charter, and to operate the plants, mills, and factories of that corporation, carry on the business theretofore done by it, and to assume all of its liabilities and obligations. Subsequently, by amended articles of incorporation, its name was changed to the Owensboro Seating & Cabinet Company. The appellee having refused to pay his subscription, this action was brought against him in September, 1906.

The petition alleged that more than $75,000 was subscribed for stock in the corporation before the 3d day of November, 1903, and that on that date the appellee and others who had subscribed for stock met for the purpose of organizing the corporation, and did organize it under the laws of the State of Wisconsin, pursuant to the articles of incorporation which had been executed in January, 1903, according to the laws of that State. The answer set up several defenses, among them that the amount of subscriptions required to bind the shareholders was never subscribed; that the subscription sued on was obtained by fraud; that the R. O. Evans Company at the time the subscription was made was an existing corporation, and its dissolution rendered invalid the subscription. At the time the subscription paper was signed by appellee, the R. O. Evans Company was in fact an existing corporation, with an authorized capital stock of $250,000, and his subscription was really a purchase of 25 shares of stock, upon the condition that $75,000 or more should be subscribed. So that the first question to be considered is, Did the dissolution of that corporation discharge appellee from his obligation to pay for the stock? If appellee subscribed for stock in a Wisconsin corporation, and the corporation went out of existence before he was required to pay his subscription,

could the Kentucky corporation enforce the subscription? The Wisconsin corporation, to which appellee subscribed, had a large authorized capital stock, but no assets. It had never attempted to transact any business, and was really not organized for the purpose of doing business. It was a foreign organization, with an authorized capital of $250,000, to consist of 2,500 shares of the par value of $100 each. The rights and liabilities of its stockholders were fixed and determined by the laws of the State of Wisconsin. The Kentucky corporation had an authorized capital of $200,000, divided into 2,000 shares of the par value of $100 each. Six hundred shares of this stock, at the option of the stockholders, might be 7 per cent preferred stock, and 600 shares 6 per cent preferred stock, the holders of the 7 per cent preferred stock being entitled to priority in the distribution of dividends. The right and liabilities of its shareholders were determined by the laws of Kentucky.

Appellee's name does not appear as one of the organizers or shareholders in the Kentucky corporation. In fact, he never attended but one meeting of the persons interested in these corporations. It seems that appellee subscribed for the stock with the understanding that the plant to be operated by the corporation should be established within the city of Owensboro, and not in the suburb called "Seven Hills;" and that, except for this understanding on his part, he would not have subscribed at all. But at the first meeting of the persons interested in the concern, held on November 3, 1903, at which appellee was present, it was disclosed that the establishment was to be conducted at Seven Hills, and not in the city of Owensboro, and also that an existing plant at Seven Hills was to be bought by the corporation and used in con-

nection with its business; and when apepllee learned
this, he immediately left the meeting, and never after-
wards ·took any part in the enterprise, nor did he
attend any other meeting of stockholders or persons
interested in its affairs. After he left the meeting
the Wisconsin charter was produced, and a resolution
presented and adopted by those present, organizing
under it and electing officers. A resolution was also
adopted at the meeting providing that the total
amount of the capital stock of the corporation should
be $250,000, divided into 2,500 shares of $100 each,
and that 1,500 of these shares should be common stock,
and 1,000 preferred stock. The next meeting was held
in September, 1904. At this meeting it was resolved:
"That it is for the best interests of this incorporation
to dissolve as a Wisconsin corporation and surrender
its charter and reorganize under the laws of Ken-
tucky, as suggested by the report of the committee
just received; and the directors are hereby requested
to take such action as may be necessary to bring about
such dissolution and reorganization, and to transfer
all the assets of the present corporation to the new
corporation." Accordingly the Wisconsin corpora-
tion was thereupon dissolved, and the Kentucky cor-
poration organized.

Assuming that appellee's subscription was binding
as an obligation upon his part to take and pay for 25
shares of the Wisconsin corporation, the question is,
Can the Kentucky corporation, under the facts here-
tofore stated, enforce this liability? We think not.
The agreement on the part of appellee was to sub-
scribe for a specific number of shares in a Wisconsin
corporation. When that corporation dissolved and its
legal existence was terminated, the liability of appel-
lee as a subscriber to its stock also ended; there being

no creditors of that concern seeking relief. No stock
was ever issued to appellee, and the mere agreement
to subscribe for stock in a corporation does not bind
the subscriber to take the same amount of stock in
another corporation that may be organized as the suc-
cessor of the one to whose capital stock he subscribed.
Appellee, as a mere subscriber for stock, had no voice
whatever in the management or conduct of the cor-
poration, and could not participate in its affairs
Hence he had no right to a vote, nor anything to say
about its management, dissolution, nor reorganiza-
tion. Nor do we find anything in the record that
operates to estop appellee from making the defense
that he was not a party to the dissolution of the Wis-
consin corporation or the creation of the Kentucky
corporation. On the contrary, it is conceded that he
was only present at the first meeting of the sub-
scribers of stock in the Wisconsin corporation, and
did not thereafter in any manner participate in the
subsequent meetings of the shareholders, or consent
to the dissolution of the Wisconsin corporation or to
the organization of the Kentucky corporation in its
place. A contract to subscribe for stock in a corpora-
tion is governed by the same principles that apply to
other contracts. It is a well-established rule that a
material alteration or change in the contract without
the consent of the subscriber will release him from
his obligations under the contract. A subscriber to
the shares of a corporation, where the amount and
nature of the capital stock, the business the corpora-
tion proposes to engage in, and the situs of its organ-
ization are agreed upon, can not be held liable upon
his contract of subscription if, without his consent, or
the existence of facts or circumstances that operate
as an estoppel or constitute a waiver upon his part,

the corporation organized is different in purpose or character, or has a different capital, or varies in any essential particular from the corporation described in the subscription paper. Thompson on Corporations, sections 72, 1268; 1 Cook on Corporations, section 197; Clarke & Marshall on Corporations, p. 1495; 10 Cyc. 405; Burrows v. Smith, 10 N. Y. 550; Norwich Lock Mfg. Co. v. Hockaday, 89 Va. 558, 16 S. E. 877; Newport Cotton Mill Co. v. Mims, 103 Tenn, 465, 53 S. W. 736.

Applying this principle to the case at hand, we find no difficulty in reaching the conclusion that material, indeed radical, changes in the subscription contract were made by the associates of the appellee in the enterprise, and that these changes were made without his consent, and that he did not waive his rights to resist the enforcement of his subscription, or do anything to estop him from setting up a defense. Wherefore the judgment of the lower court dismissing the petition of appellant is affirmed.