## MANN v. MITCHELL. (No. 6756.)*

(Court of Civil Appeals of Texas. San Antonio. May 17, 1922. Rehearing Denied June 30, 1922.)

1. Limitation of actions ⬤➡127(13)—Subscription contract and note alleged in amended petition held different from that in original petition.

Where the original petition alleged the execution of a subscription contract for stock in a bonding company and a note for the balance due on the subscription price with 6 per cent. interest and the usual attorney's fee, both of which were executed on January 30, 1911, and an amended petition filed more than four years thereafter alleged a subscription to an organization company on December 16, 1910, and the execution of a note on June 30,

1911, for the same amount, with interest, but without attorney's fees, the variance between the instruments alleged in the original and amended petitions was so great as to indicate they were different instruments, so that the amended petition alleged a different cause of action against which the statute of limitations had run.

2. Pleading ⬤➡335—Amended petition lodged with papers in case is not filed.

Though a paper will be considered filed in law if lodged with the clerk with directions to file it, whether he indorsed the file mark thereupon or not, and upon proper motion the clerk could be directed to file the same nunc pro tunc as of the proper date, that an amended petition was placed with the papers in the case· and was among them on a stated date, of which fact defendant had notice, does not show a legal filing.

3. Corporations ⬤➡84—Change of state of organization releases subscriber.

A subscriber to the stock of a corporation to be incorporated under the laws of the state is not bound by his subscription where the corporation was thereafter incorporated under the laws of a foreign state.

Appeal from District·Court, Tarrant County; Ben M. Terrell, Judge.

Action by J. W. Mitchell, as receiver of the Commonwealth Bonding & Casualty Insurance Company, against O. D. Mann. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered for defendant.

See, also, 241 S. W. 715.

C. A. Wright, of Fort Worth, for appellant. Ocie Speer and Marvin H. Brown, both of Fort Worth, for appellee.

COBBS, J. Appellee, being appointed receiver of the Commonwealth Bonding & Casualty Insurance Company, an Arizona corporation by the district court of Tarrant county, Tex., September 18, 1915, to bring suits for all unpaid stock and other indebtedness owing said Commonwealth Bonding & Casualty Insurance Company, filed his original petition against O. D. Mann January 6, 1919, to which appellant on March 19, 1916, by demurrers, general and special denials as to any legal liability to pay said note or subscription contract, answered and pleaded the statute of two and four year limitation as to said subscription contract and note.

On April 13, 1921, appellee filed his first amended original petition. By special order the court, over appellant's objection, permitted said petition to be filed as of September 18, 1916.

Appellant excepted to the amended petition, because the same had reference to the so-called subscription contract sued on as pleaded April 13, 1921, because barred by the

four-year statute of limitation, and excepted to the allegations in respect to the note therein sued on because barred by the four-year statute of limitations, because the said note as alleged therein was different from the note alleged in the original petition and pleaded in bar to the note and subscription contract sued on in said amended petition, the particular subscription contract therein being set up for the first time in said amended petition, filed April 13, 1921, and the particular note sued on being declared upon for the first time in said amended petition filed April 13, 1921.

The petition of January 6, 1916, was to recover on the note for $1,750, dated the 30th day of January, 1911, and due the 30th day of January, 1915, bearing 6 per cent, interest from date, payable in Fort Worth, with usual attorney's fees in case of default.

The second count in the petition in the alternative seeks to recover on the ground that on 30th day of January, 1911, appellant subscribed in writing for the capital stock of said bonding company corporation for stock of the value of $1,750, and became liable and bound, etc.

The petition also seeks a foreclosure upon certain collaterals appellant gave to secure the payment of said subscription. The amended petition of April 13, 1921, sues upon and describes the same, so far as we can see not included in the original petition, alleging when appellant executed the note and delivered it as being secured by certain collaterals described, and sought now to be foreclosed.

The amended petition of April 13, 1921, as in the original petition, seeks to recover in the alternative on the stock subscription as set forth in the original petition, and also seeks, as in the original petition, a foreclosure of the collateral security now fully described and attached to the last amended petition.

We set out, as pleaded, the fifth paragraph of appellee's amended petition as important to be considered in connection with appellant's pleading and defense, as follows:

"Plaintiff further alleges that on the 16th day of December, 1910, the Commonwealth Organization Company of Fort Worth, Tex., were promoting the organization of a casualty bonding and accident insurance company then contemplated to be incorporated under the laws of the state of Texas under the name of the Commonwealth Bonding & Accident Insurance Company or such other name as might be selected, and defendant on said date subscribed in writing for 50 one-tenth shares of stock of the par value of $10 each in said contemplated corporation, for which he agreed to pay $2,000, $250 of which he paid to the promoters of said contemplated corporation, and he agreed in writing in his said subscription to the capital stock of said corporation to pay the balance, namely, $1,750, to said Bonding & Accident Insurance Company, or its trustees in Fort Worth at any time after November 1, 1910, and immediately upon receipt of notice from the said Commonwealth Organization Company that its capital stock has been subscribed in good faith in amounts and at rates netting the company at least $200,000 of capital stock in the aggregate when paid, and defendant afterwards did receive such notice, such amount of the capital stock of said contemplated corporation having been so subscribed. Plaintiff further alleges that before said contemplated corporation had been incorporated the name of the proposed corporation had been changed to the Commonwealth Bonding & Casualty Insurance Company, the corporation of which plaintiff is receiver, and on, to wit, the 23d of March, 1911, it was incorporated under the laws of the then territory, but now state, of Arizona, instead of under the laws of Texas, that this was all done with the knowledge and consent and acquiescence of defendant and all other subscribers to the capital stock of said contemplated corporation, and thereafter defendant, with full knowledge of all the facts in the premises, fully ratified and confirmed the change in the name of said corporation and its incorporation under the laws of Arizona instead of under the laws of Texas."

The note attached to the petition is shown to be dated June 30, 1911, instead of, as alleged, January 30, 1911.

The subscription obligation is dated the 16th day of December, 1910, for 50 one-tenth shares of the capital stock of the Casualty Bonding & Accident Insurance Company, to be incorporated under the laws of the state of Texas, under the name of Commonwealth Bonding & Accident Insurance Company, or such other name as may be selected.

The pleading of appellant was sufficient to raise all the defenses necessary for the disposition of the case without further reciting them.

The cause was tried by the court without a jury, and judgment was rendered in favor of appellee, as of April 13, 1921, for $3,407, with foreclosure.

We do not think there is any merit in appellant's assignments and propositions claiming that a new or different cause of action was set up by the amendment than originally sued upon. The petition sets forth the note and subscription for stock as a part of the petition, and for all purposes of variance will be treated as a part of the petition. Peters v. Crittenden, 8 Tex. 131; Greenwood v. Anderson, 8 Tex. 225; English v. Helms, 4 Tex. 228; Pyron v. Grinder, 25 Tex. Supp. 159—so also may be looked to, to control the pleadings. Morrison v. Keese, 25 Tex. Supp. 154; Longley v. Caruthers, 64 Tex. 287. When the petition, on its face, sufficiently sets out the cause of action and then prays for all relief, as this one does, ordinarily that relief to which the pleader has shown himself entitled to will be administered. Farrar v. Beeman, 63 Tex. 175; Grabenheimer v. Blum, 63 Tex. 369; Silberberg v. Pearson, 75 Tex. 287, 12 S. W. 850; Lee v. Boutwell, 44 Tex. 151.

The true test is laid down by Mr. Justice Brown in Phœnix Lbr. Co. v. Houston Water Wks., 94 Tex. 456, 61 S. W. 707, in determining the identity of causes of action, viz.:

(1) Would a recovery had upon the original petition bar a recovery under the amended petition?

(2) Would the same evidence support both pleadings?

(3) Is the measure of damages the same in each case?

(4) Are the allegations of each subject to the same defenses?

From an inspection of the pleadings here, the answer to Mr. Justice Brown's well-stated rules must be in the affirmative. There was left in the files of this case for our inspection a manuscript opinion delivered by Mr. Justice Hodges in Mann v. Mitchell, handed down April 13, 1922, which appears in volume 241, at page 715, of the Southwestern Reporter, that seems to the foregoing effect very well in point with this case.

There are not two separate causes of action. The suit grows out of a subscription for stock, and was, so to speak, merged in the note likewise sued upon. Neither are abandoned. The cause of action is the same, and none other, in whatever form it appears described in the pleadings. The assignment is overruled.

It is assigned and claimed as error that there was no legal liability or obligation resting upon the appellant to pay either the note or the subscription because the appellant subscribed for stock of a corporation "to be incorporated in pursuance of the laws of the state of Texas," whereas, after securing his subscription for the capital stock, the parties' met and organized a corporation, not under the laws of Texas, but under the laws of Arizona, a nonresident state. The facts show that, after said subscription for stock was delivered, a meeting of the subscribers to the capital stock was held, at which meeting, without any notice to appellant, the name of the proposed corporation was changed from Commonwealth Bonding & Accident Insurance Company to Commonwealth Bonding & Casualty Insurance Company, and that the place of incorporation was changed from Texas to Arizona.

Appellant gave H. P. Brahan and M. H. Mills a joint power "to vote as my proxy at any annual or special meeting of the stockholders of the Commonwealth Bonding & Casualty Insurance Company for the election of directors and upon such other questions as may come before such annual or special meeting."

It was at this first meeting that the incorporation was changed from Texas to Arizona, and the corporation carried the defendant on its books as a subscriber in said Arizona corporation from June 30, 1911, to date of the appointment of the receiver.

Appellant testified that he did not learn that the corporation had been incorporated under the laws of Arizona until about 1916, instead of the laws of Texas; that, when he subscribed to the contract and gave his note, it was represented to him that the stock certificate would be issued and sent him at once, which was never done, and he has never received any stock in the company. He never attended a meeting of the company, and had no knowledge of the change from a Texas corporation to an Arizona corporation. Some time after the subscription for the stock was made he wrote asking why his stock was not sent him, and, after the new or second note was given, wrote asking same question and demanded return of note, if stock was not issued and delivered. On more than one occasion proxies were sent him for his signature, which he returned stating, as he had received no stock, "I did not consider I was a stockholder." "No demand was made me [him] for payment of note until suit was filed against me by the receiver, and at that time I learned for the first time of the change of the name and place of incorporation."

Appellee introduced stock certificate No. 13, issued to appellant for 50 shares of the capital stock of the company, dated June 20, 1911, coming from the possession of appellee, and never, as shown by the appellant, delivered to or seen by him, though he had made his demand for the stock subscribed.

The power of attorney did not authorize the agent to bind the appellant to become a subscriber to stock in an Arizona company. The agent exceeded the authority. In construing a written instrument, effect must be given to the obvious purpose and intent of the party creating the agency—what was in the mind of the appellant when he subscribed to stock in a Texas company. It was never contemplated that the Texas corporation stock subscription would be changed to a nonresident corporation. There was no authority given, express or implied, so to do, nor would the principal be bound by such usurped powers. This agency was one of trust and confidence, and, in so far as any action should be taken in organizing a Texas corporation, the appellant would be bound. Such a doctrine is so well settled to cite authorities would simply be weighting and loading the opinion down.

This foreign corporation, the outgrowth of the excessive act of appellant's agent, so far as it affects appellant, had no right to convert appellant's subscription, made to a Texas corporation, into and enter it on its books and carry the same as though it were a subscription to said Arizona company, without appellant's knowledge, consent, or participation. It knew from the subscription of appellants that it kept and from the power of attorney it kept, construing the two together here, and the proceedings on its books,

that under such instrument the vote of appellant's attorney which it received and acted on was not authorized, but contrary to the very terms of the subscription for stock in a Texas corporation. We do not agree with appellee in his statement, citing Davis v. Mitchell, Receiver (Tex. Civ. App.) 225 S. W. 1117, and the two other cases, that no other judgment could be rendered.

While the cited Davis Case grows out of the same receivership, the same questions do not arise there as here. In the Davis Case, supra, the court is holding: First, collateral attack on the appointment of a receiver is improper; second, a judgment in favor of receiver will bar creditors represented by the receiver; third, that when a stockholder participates in a stockholders' meeting, he cannot escape liability on the ground that by our Constitution, a corporation is forbidden to issue stock, except for money paid, labor done, or property actually received reasonably worth the amount of the stock.

There is no evidence, outside of the unlawful act of appellant's agent in participating in the organization of an Arizona corporation in lieu of the Texas corporation to which appellant subscribed for stock, that he ever knew he had been misrepresented, or that it was claimed that he was a stockholder therein, or that his name was carried on its books. This his uncontradicted evidence shows. Moreover, he has testified that he demanded his stock repeatedly, and it was never delivered to him. Had it been, he would have known the facts. That was not done. It was kept in the corporation's possession until appellee introduced it in evidence.

The fact that appellant executed notes and delivered collateral security to pay the subscription cannot be treated as either a waiver or acquiescence or ratification. No one can waive acquiescence in or ratify a fact unless they had previous knowledge of its existence. How can one ratify or confirm a thing unknown to him? Such a proposition is academic.

A Texan may well desire to subscribe to stock issued under the laws of his own state and under its protection and control and with which and the operation of corporations thereunder he may be quite familiar, but entirely unwilling to subscribe to and become a member of an Arizona company, administered under its laws and practice, of which he may be ignorant, as well as ignorant of the persons and officers handling its affairs. The difference is too great to bind appellant as a subscriber thereto. He must have notice of its change to an Arizona corporation, or thereafter, with knowledge, have waived all objections thereto and ratified and confirmed the same. There is no evidence that he did, or anything tending to show that he did.

It may be on another trial that sufficient evidence of notice may be brought home to him or other relevant facts introduced on all the issues, so we do not feel that we would now be justified in reversing and rendering the judgment, and the cause is therefore remanded to the trial court for another trial.

Reversed and remanded.

### On Motions for Rehearing.

Both appellant and appellee have filed motions for rehearing. Appellant especially complains that our statement of the pleadings and obligations sued upon is not sufficiently detailed, so as to present the facts upon which the plea of the statute of limitations may be more apparent, which we accordingly do. The suit was filed January 6, 1916, by receiver of the Commonwealth Bonding & Casualty Insurance Company, a corporation, but its residence and domicile is not alleged, and declares on a promissory note dated the 30th of January, 1911, for the sum of $1,750, due the 30th day of January, 1915, with 6 per cent. interest from date and 10 per cent. attorney's fees. It then sets out the collateral security pleaded "to secure the payment of the note here sued upon."

The second count in said petition is that "defendant on said 30th day of January, 1911, subscribed in writing for the capital stock of said bonding company corporation for stock, value $1,750," reciting that the deed of trust described and sought to be foreclosed was given to secure the payment of the subscription "of said capital stock of said bonding company." The prayer is, first, to have judgment "on the note, interest, and attorney's fees," then, in the alternative, for amount due "on his subscription to its capital stock," with prayer also for foreclosure of the "lien against said collaterals," etc.

The appellant pleaded to said petition with exceptions, and by answer denied "the delivery of the note sued on herein or the subscription to said stock, and says that said note was never in fact delivered or intended to be, and was never to be delivered or intended to be except upon certain contingencies which have never happened, and hence never had any legal operation," alleging same thing in respect to any subscription for stock, and, if so, did not know what he was signing; then pleaded the two and four year statutes of limitation to any such subscription. The plea here of the statute of limitations seems only directed to the stock subscription, and not to the note sued on.

Nothing seems to have been done with the case until over four years thereafter, when, on April 13, 1921, appellee filed an amended pleading amending the original petition filed January, 1916, alleging that on the 30th day of January, 1911, appellant executed and delivered to said bonding company, a corpora-

tion, his certain promissory note, in writing, for the sum of $1,750, due the 30th day of January, 1915, with 6 per cent. interest per annum from date, with the usual 10 per cent. attorney's fees; then, as in the original petition, sets out the collateral security given "to secure the payment of the note here sued upon"; then further pleaded, as fully set out and quoted on pages 2 and 3 of our opinion (243 S. W. 735), substantially; that on the 16th day of December, 1910, the Commonwealth Organization Company of Fort Worth was promoting the organization of a casualty bonding and accident insurance company to be incorporated under the laws of the state of Texas under the name of the Commonwealth Bonding & Accident Insurance Company, or such other name as might be selected, and appellant on said date subscribed for 50 one-tenth shares of said stock, for which he agreed to pay $2,000, of which amount $250.00 was to be paid in cash, as the promoters' fees, and the balance, $1,750, to said Bonding & Accident Insurance Company, or its trustees, in Fort Worth, at any time after November 1, 1910.

It was alleged:

"Before said contemplated corporation had been incorporated the name of the proposed corporation had been changed to the Commonwealth Bonding & Casualty Insurance Company, which was incorporated on the 23d day of March, 1911, under the laws of the then territory, but now state, of Arizona, instead of under the laws of Texas."

It is then alleged that appellant wholly failed to pay his subscription to the capital stock of said corporation, for which judgment is prayed with 6 per cent. interest from the 16th day of December, 1910. It is then alleged that as an additional security for and as evidence of his indebtedness for the capital stock of said corporation he executed his promissory note set out in paragraph No. 2 of the amended petition (dated the 30th day of June, 1911, for $1,750 due the 30th day of June, 1915), which it is alleged was given as an additional security for the capital stock of said corporation and attaches the note and stock subscription as exhibits to and made a part of the petition.

Turning to the exhibits, the note is a plain promissory note in the usual form, dated June 30, 1911, payable on June 30, 1915, to Commonwealth Bonding & Casualty Insurance Company for $1,750, with 6 per cent. interest from date. It has no provision as to attorney's fees whatever. The subscription to the stock recites that the company is "to be incorporated in pursuance of the laws of the state of Texas under the name of Commonwealth Bonding & Accident Insurance Company" and to be organized on or before December 31, 1910. And any time after November 1, 1910, upon receipt of no-

tice of the organization of said company and that its capital stock in good faith has had paid in the aggregate $200,000, appellee agreed to pay $250, the remaining sum of his promoters' subscription. This subscription bears date December 16, 1910. It is nowhere shown that the said $200,000 was ever paid in.

On April 13, 1921, appellant filed his first amended answer, generally excepting to the allegations in appellee's petition, then specially excepting to so much of the amended petition setting up the subscription contract, and because it shows that it matured more than four years prior to the filing of this suit, and four years prior to the appointment of the receiver, and hence was barred by the four-year statute of limitations; that it is set up for the first time in plaintiff's amended pleading filed April 13, 1921, which petition was filed over appellant's objection, as of date September 18, 1916, which on its face showed it to be barred by the four-year statute of limitations.

It further excepted to that part of the petition alleging that "he sues defendant upon a note alleged to have been executed June 30, 1911, and due June 30, 1915. The same for the first time appears in the amended petition filed the 13th day of April, 1921, filed as of September 18, 1916, over appellant's objections, because the allegations show the same matured June 30, 1915, and the receiver was appointed September, 1915, when more than four years elapsed from the maturity of said note to the filing of said amended petition," setting up for the first time said note. Said note, not being described in the original petition, is barred by the four-year statute of limitations at the time of filing the amended petition. He specially answered that when he signed the subscription for stock Mr. Mays, one of the promoters who secured it, represented to him, and emphasized the fact, that the company was to be organized as a Texas corporation, a home corporation, which representations he relied upon, and they induced his subscription, and thereafter, when he signed the note sued upon, the same representations were made that it was to be a Texas corporation, which representations he believed, and caused the execution of the note, and nothing was ever said to him that it was to be an Arizona corporation; that when said note was signed the agent promised to send him the subscribed for shares of stock, which was never done, and he never knew that same were to be issued by the Arizona corporation until years after and never ratified, acquiesced in, or consented to his subscription contract or note being diverted to said Arizona corporation, and has ever since being so informed consistently renounced and repudiated the same and had no knowledge or information thereof until the appointment

of the receiver. Appellant also put in a sworn plea of the want of a valid consideration to support the said subscription contract and the note sued upon, the consideration having wholly failed, the only consideration being that the same was to be for stock issued by a company of like name, but to be incorporated under the laws of Texas.

It was further pleaded that said corporation was organized under the laws of Arizona, and that neither the subscription for stock nor the note was delivered to said Arizona corporation by appellant or with his knowledge and consent; that the subscription contract set up in the first amended petition is a different subscription contract and utterly variant and different from that one set up in the original petition filed on January 6, 1916, and the same difference in respect to the note described therein from that now described in said amended petition, and that the four-year statute of limitation had barred each when the amended petition was filed, and they were so barred when the original petition was filed; that the note sued on in the amended petition dated June 30, 1911, due on June 30, 1915, is wholly different from the note described in the original petition, and was barred by the statute of limitation of four years when the amendment was filed.

It is very apparent that the two notes, while calling for the same rate of interest and bearing same date, are materially different. The due date in the first is 30th day of January 1915, and that in the second is June 30, 1915. Both notes call for 6 per cent. interest per annum from date, and both petitions allege the notes sued on contain the usual 10 per cent. attorney's fees.

The amended petition attaches as a part of its petition the note as an exhibit. It is in a very simple form, of the usual plain promissory notes for the payment of money, but has no clause such as alleged in the petition, payable to the Commonwealth Bonding & Casualty Insurance Company, with 10 per cent. attorney's fees, etc. As establishing the fact of the existence of two notes and that the last note sued on was barred when the amended petition was filed, the note so executed is described as follows:

"Brady, Texas, June 30th, A. D. 1911. $1,750.00. No. 23. On June 30, 1915, after date, I promise to pay to the order of Commonwealth Bonding & Casualty Insurance Company seventeen hundred fifty and no/100 dollars, for value received, negotiable and payable without defalcation or discount at Fort Worth, Texas, with interest at the rate of 6 per cent. per annum from date until paid, payable annually as it accrues. O. D. Mann. Due June 30, 1911. Address, Brady, Texas."

The undisputed testimony is that, when he signed this second note, no mention of the Arizona corporation was made, and he signed the note because the agent told him there had been some mistake in the first, and there was nothing to show in the face of the note or anywhere else that it was payable to the Arizona corporation.

Appellant is mistaken in his contention that the first petition sets out a contract reciting "a corporation under the laws of Arizona," but is correct in saying it sets out a contract with Mann and the "Commonwealth Bonding & Casualty Insurance Company, a corporation." While it recites the contract with the Commonwealth Organization Company, we do not think, as appellant contends, there is any material difference or variance between the two petitions in respect to the amount of the stock subscription. $1,750 was for stock and the $250 for promotion, making the aggregate $2,000.

[1] There is a material variance in the description of the subscription contract for stock in the first, for the date alleged is January 30, 1911, and in the amended one it is alleged to be December 10, 1910, which latter date corresponds with the stock subscription attached to the amended petition as an exhibit.

We proceeded upon the theory in our original opinion that there was but one subscription list for stock sued upon and one note, and therefore but one cause of action set up, being the same cause sued upon originally. The difference is too great for that, and for that reason we have set out the pleadings themselves in this opinion. We have verified the pleadings and the evidence, and say that the same are found as alleged and shown herein and as contained in the pleading, which shows the misrecitals and variance as set out herein. In view of the pleadings, it is apparent that, when the amended pleading was filed, the cause of action sued upon was barred by the statute of limitations of four years, if indeed it was not barred at the institution of the suit. However liberal our system of amendment may be, it will not allow the suit to be based on a note or a subscription for stock of one date, etc., and then, after the four years, set up another obligation distinct and different in its terms.

[2] Appellant complains that we did not act on his assignment challenging the action of the court in allowing the appellant to file back his amended petition to September 18, 1916, though in fact not filed until April 13, 1921, on the alleged ground that appellee had given same to the clerk of the court, who had failed to file it. A paper would be considered filed in law if lodged with the clerk and he was directed to file it, whether he indorsed the file mark thereupon or not. In a proper case and upon a proper motion to file nunc pro tunc an unindorsed paper, supported by sufficient evidence, the court would be authorized to direct the clerk to file the

same as of the requested date. There is no evidence that the same was properly lodged with the clerk as a file paper and his attention called thereto. There is evidence it was placed with the papers in this case and was among them on the 18th day of September, 1916, and appellant had notice thereof, but that did not constitute a legal filing.

[3] We further find, at appellant's request, that there is no evidence that the agents to whom appellants gave the power of attorney to vote as his proxy at the annual or special or any other meeting of the stockholders voted for said change of the corporation to be organized as a corporation under the laws of Arizona. Nor is there any evidence that either one of said agents, appellant himself, or any other person or agent authorized by him was present at said stockholders' meeting or any other meeting of the stockholders, or otherwise participated therein or voted for any change. There is no evidence that John Scarbauer, N. P. Brahan, or M. H. Wills attended any of said meetings or voted for said change or voted any proxy or stock of appellant for any such change.

The fourth assignment of error and proposition thereunder sufficiently raise the question as to whether there was ever any liability on the part of appellant to the Arizona corporation, and cites in support of that contention Fletcher's Cyclopedia Corporations, vol. 2, § 521, pp. 1130, 1131. See, also, New Nueces Hotel Co. v. Weil Bros., 243 S. W. 731, this day decided by this court.

Appellant's subscription to the Texas corporation terminated upon its failure to incorporate under the Texas laws, and therefore the Arizona corporation could not enforce his subscription, and he was not estopped from denying his liability thereon. This change was equivalent to a material alteration in the subscription for stock, without the consent of appellant, and released him from any obligation upon his subscription. Cook on Corp. vol. 1 (7th Ed.) § 194; Owensboro Seating & Cabinet Co. v. Miller, 130 Ky. 310, 113 S. W. 423.

It is perfectly clear to us that the obligation sued upon, aside from the variance in the allegations and the proof in respect to the several contracts sued upon, appellee's claim, is wholly lacking in consideration and nonenforceable. He never subscribed to or bound himself to the assignee corporation, and there is no evidence to support such contention.

The motion for rehearing filed by appellee is overruled.

The motion for rehearing filed by appellant is granted.

Our judgment reversing and remanding said cause is now set aside, and judgment is here now entered reversing and rendering said cause in favor of appellant.