Newport Cotton Mill Co. *v.* Mims.

NEWPORT COTTON MILL CO. *v.* MIMS.

(*Knoxville.* November 11, 1899.)

1. CORPORATIONS. *Stockholders' liability on subscriptions.*

Subscribers to the stock of a corporation to be organized with a capitalization of $30,000, cannot be held upon their contract if, without their acquiescence or participation, the corporation is capitalized at $35,000. (*Post, pp. 468–472.*)

Cases cited: 18 Wall., 233; 126 Mass., 155; 9 Cush., 423.

2. SAME. *Same.*

Subscriptions to the stock of a corporation cannot be enforced if the corporation has not the power to issue shares of stock to the subscribers in compliance with the terms of their contract. (*Post, pp. 473, 474.*)

Case cited and approved: Railroad *v.* Knoxville, 98 Tenn., 2.

3. SAME. *Same.*

The receiver and creditors of an insolvent corporation stand upon no higher ground than the corporation itself in a solvent state, as regards the enforcement of a contract of subscription which the corporation, without fault or participation of the contesting subscribers, has failed or disabled itself to perform on its part. (*Post, p. 473.*)

4. SAME. *Same.*

Subscribers to the stock of a corporation are not estopped, especially if estoppel is not relied upon in the pleadings, to resist collection of their subscriptions on account of the failure of the company to comply with essential conditions of the contract of subscription, by the fact that they may have become directors, or attended meetings of the directors and stockholders, if they did not participate or acquiesce in the illegal

19 P—30

acts of the corporation, but promptly repudiated such action after notice. (*Post, pp. 474, 475.*)

Cases cited: 4 C. B., 404; 30 N. H., 390; 5 Neb., 56; 39 Me., 571.

---

### FROM COCKE.

Appeal from the Chancery Court of Cocke County. JOHN P. SMITH, Ch.

SHIELDS & MOUNTCASTLE, G. W. GORRELL, and W. H. JONES for Newport Cotton Mill Co.

W. J. McSWEEN, H. N. CATE, WASHBURN, PICKLE & TURNER for Mims.

BEARD, J. These consolidated causes consist of five bills filed in the Chancery Court of Cocke County by the Newport Cotton Mill Company against alleged subscribers to its stock for amounts alleged to be due by them on their respective stock subscriptions.

The complainant seeks to recover of C. B. Mims, $500; of J. A. Balch, $150; of J. J. Denton, $500; of L. M. Eubank, $250; and of W. C. Anderson, $750. The bills, except as to names and amounts, are substantially the same in each case, and aver that the complainant is a domestic corporation; that it was capitalized at $35,000, divided into shares of $100 each, and that each of the defendants agreed to take a number of

the shares of the capital stock, aggregating the above amounts, respectively; that calls had been made, and that defendants had failed and refused to pay.

The bills aver, as originally filed, that the "complainant has now in operation a great part of its plant, and is a going concern."

Subsequently, the corporation having fallen into insolvency, and this having been adjudged in another cause in that Court, and a receiver appointed to collect all outstanding claims due to the corporation, on motion supported by affidavit, the complainant was permitted to strike out the averment in the several bills of these consolidated causes that it was a going concern, and substitute therefor an allegation of this adjudged insolvency of the corporation and the appointment of a receiver of all its assets. Still later the receiver, on his petition, was made a party complainant.

The separate answers of these defendants make a number of defenses, only one of which need be mentioned, as it is conclusive of these causes. This defense grows out of the agreement to take stock in the complainant corporation when it should be organized. This agreement was signed, with others, by these defendants, and was delivered to the corporation. No other subscription was ever made by, and no certificates were issued to, them. The right of recovery rests alone upon this written agreement, which is as follows:

"We, the undersigned, citizens of Cocke County, Tennessee, have formed ourselves into an association for the purpose of organizing a corporation for the purpose of manufacturing cotton, wool, and silk goods. It is understood that this corporation is to be organized in the following manner: The building known as the tobacco factory is to be put in by its owners for $10,000 of the stock of said corporation, $10,000 to be raised by the citizens of Cocke County, and $10,000 by James Lord, of South Carolina, and for the purpose of effecting this organization, we, the undersigned subscribers to the sums opposite our names, as part of the capital stock of said corporation, bind ourselves only in the event the said James Lord raises his part of the said capital stock. The said sums subscribed shall be paid as follows: Twenty-five per cent. on perfection of organization, twenty-five per cent. sixty days thereafter, and ten per cent. every thirty days thereafter until the full amount is paid, making a total capital stock of $30,000."

The record discloses that this corporation had the right to fix by by-laws its capital stock, and that it was accordingly organized upon a basis of a capitalization of $35,000, divided into shares of $100 each. Disregarding the fact that subsequently this was increased to $50,000, we have complainant seeking recovery against these defendants upon the distinct averment contained in each of these

bills, that "it was capitalized at $35,000, divided into shares of $100 each, and that the defendants subscribed for and agreed to take the number of shares of its capital stock, as has already been set out," while the defendants resist the recovery upon the ground that they subscribed for shares in a corporation whose "total capital stock" was to be $30,000.

Dismissing the contention of the defendants, which, however, has much of force in it, and is well sustained by authority, that there is a fatal variance between the contract alleged and that proven, we come to the more serious question: Can one who agrees to take shares of stock in a corporation to be organized upon a basis of capital stock aggregating $30,000, be forced to pay for shares in a corporation capitalized at $35,000, or any other different sum?

It would seem that this question would easily furnish its own answer, for to hold that this could be done would be to impose upon such an one an obligation which was in the face and in spite of his written contract. The rule is general that one has the right to stand upon the contract he has made. He cannot be compelled to accept a different contract, even if it be more favorable to him. Certainly he would not be forced against his will to take in lieu one less favorable in its terms. This rule applies with more than

ordinary force to a subscription for shares of stock of a corporation.

The influence and control which the shareholder can exercise in such a body depends upon the proportion his holding bears to the entire capital stock. In the present case, upon the basis of a capitalization of $30,000, that one of these defendants who agreed to take five shares of one hundred dollars each, par value, of this stock would have a voting and controlling power in the management of its affairs of 1-60th, while in the corporation capitalized at $35,000, this power would be reduced to 1-70th. As the capital was increased, this power would be correspondingly diminished until in a company of large capitalization his influence, limited to the shares held by him, would be of no practical value in protecting his own interests, or in determining the business operations of the corporation.

We think it clear that if these defendants can be held on the subscription which they made to pay for shares in this corporation, organized with a capital stock of $35,000, they might equally have been required to do so had the basis of capitalization been fixed at $100,000, or any larger amount.

Even where a corporation, with fixed capital, is in active operation, "an increase or reduction of the capital stock is such a fundamental change in its affairs that, although it has been duly au-

thorized by Act of the Legislature, or by the charter of incorporation, it cannot lawfully be effected merely by the act or assent of the board of directors, but must be authorized by the shareholders at a corporate meeting." 1 Cook on Stock and Stockholders and Corporation Laws, 285.

In the *Chicago City Railway Company* v. *Alerton,* 18 Wall., 233, the Supreme Court of the United States, recognizing the vital character of the change, and the need of its being determined alone by the stockholders, say that for this rule "the reason is obvious. . . . To change it (the capital stock) without the consent of the stockholders, would be to make them members of an association in which they never consented to become such. It would change the relative influence, control, and profit of each member."

By analogy it would seem that where it was contemplated to capitalize a corporation to be organized in the future at $30,000, and a party agreed to take shares in its capital stock, and others interested in the enterprise, afterwards, for their own reasons, fixed the basis of organization at $35,000, the change would be so radical or fundamental as to relieve him from his special and limited obligation.

And so it was distinctly held in *Katama Land Company* v. *Jernigan,* 126 Mass., 155, a case very similar to the one at bar. In that case the subscription paper provided "that, whereas, the Katama

Land Company had been incorporated, the capital stock of which corporation is fixed at $50,000; now, therefore, the undersigned hereby associate themselves together to form said corporation, and severally subscribe for and agree, each with the other, and with said corporation, to take the number of shares in said corporation affixed to their respective names, and to pay therefor the sum of one hundred dollars per share at such times as shall be determined upon the organization of said corporation." The defendant subscribed for ten shares, and the object of the suit was to hold him liable on that subscription. It appeared on the trial that subscriptions to a greater amount than $50,000 were obtained. At a meeting of the promoters and subscribers for shares in the corporation, upon a disclosure of this fact, it was agreed to fix (or as it was called by this meeting) to increase the capital stock to $100,000, and it was also agreed or voted "that all the subscribers be now admitted to the company with the rights and privileges of stockholders under the agreement," but it was held that this could not create any liability of the defendant under the agreement. The Court said: "The contract contains two promises by the defendant: one that he would take ten shares of the par value of one hundred dollars each in a corporation of which the capital is fixed at fifty thousand dollars; and the other, which is collateral to the first, that he would pay

one hundred dollars upon each share at such times as should be determined by the corporation. · It was one of the essential conditions of each of these promises that the capital stock of the corporation should be fifty thousand dollars. He agreed to take and to pay for one-fiftieth part of the capital stock of the corporation. If this action is maintained, he would be required to take one one-hundredth part of the capital stock, and this would impose upon him a contract different from that into which he entered." Citing *Atlantic Cotton Mills* v. *Abbott,* 9 Cush., 423.

An additional answer to the claim of complainant for recovery in these causes is, that an implied condition to the enforcement of payment of stock subscriptions is that the corporation shall have the power to issue shares of stock to subscribers in compliance with their contract of · subscription. *Railroad* v. *Knoxville,* 98 Tenn., 2. And this, as is apparent, cannot be done by this corporation as capitalized.

In regard to this defense, it is evident that the creditors represented here by the receiver can stand upon no higher ground than the corporation. The failure of the contract because of the violation of the "essential condition" as to the capital stock is an answer in the one case as well as in the other.

It is contended, however, that as a matter of fact, this corporation was organized with a capital

stock of $30,000, which was subsequently increased
to $35,000, and that afterwards there was a further
increase to $50,000. This contention is rested
upon the first finding of the Court of Chancery
Appeals that the subscriptions for shares of stock
"more than completed the thirty thousand dollars
specified in the subscription paper." That Court,
however, does not say when it was thus completed,
and especially refrains from saying that the cor-
poration, upon the basis of its being complete,
fixed the capital stock at that sum. In a former
part of this finding that Court does say "its cap-
ital stock was increased soon after its charter was
granted . . . to $35,000. The word "increased"
was evidently used inadvertently for "fixed," for in
the supplemental finding made in response to a request
that a definite report on this matter be made,
that Court finds as follows: "We say that at a
meeting of the stockholders of the company, May
8, 1896, by-laws for the corporation were adopted,
and in these by-laws the capital stock was fixed
at $35,000, . . . and that subsequently . . .
it was increased to $50,000. The stockholders and
directors took no other action in fixing the capital
stock of the company." This finding is a conclu-
sive answer to this contention.

It is also insisted in argument that the de-
fendants are, by their conduct, estopped to resist
collection of their subscription. This insistence can-
not be maintained. As to Mims, it is true he

was a member of the first board of directors, but resigned after a short service and one month before the capital stock was fixed, and declined to have further connection with the corporation The defendants, Denton, Anderson, and Balch never attended a meeting of stockholders, nor, in any way, took part in the management of the affairs of the corporation. The defendant Eubank attended only one. stockholders' meeting, which was held over two months before that at which the capital stock was fixed. These facts afford a sufficient answer to this insistence. *Wondner* v. *Sharp,* 4 C. B., 404; *New H. Cent. R. R. Co.* v. *Johnson,* 30 N. H., 390; *Livesey* v. *Omaha Hotel Co.,* 5 Neb., 56; *Oldtown & L. R. R. Co.* v. *Veazie,* 39 Me., 571.

Another equally conclusive is that complainant does not aver or rely upon the rule of estoppel or the doctrine of waiver in any of its bills. It results that the decree of the Court of Chancery Appeals is reversed, and that these bills must be dismissed.