HOLLANDER v. HEASLIP.

(Circuit Court of Appeals, Fifth Circuit. March 24, 1915. Rehearing Denied April 27, 1915.)

No. 2650.

1. CORPORATIONS ⬿560—INSOLVENCY PROCEEDINGS—JURISDICTION TO DETERMINE CLAIMS.

A court of equity, administering the estate of an insolvent corporation through its receiver, has jurisdiction, on an ancillary bill filed by the receiver, to hear and determine a claim on behalf of the corporation against a third person, when it can obtain jurisdiction over his person, although the claim is of a purely legal nature.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. ⬿560.]

2. CORPORATIONS ⬿228—STOCKHOLDERS—LIABILITY FOR UNPAID SUBSCRIPTION.

Where subscriptions to the stock of a proposed corporation were conditioned on the obtaining of bona fide subscriptions for one-half of the stock before the corporation was organized and commenced business, which condition was also expressed in its charter, a subscriber, who made the initial payment on his stock on false representations by the directors that the condition had been fulfilled, cannot be held liable at suit of a receiver for the unpaid portion of his subscription, unless he has waived the condition or is estopped as against creditors of the corporation from insisting upon it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 874, 878; Dec. Dig. ⬿228.]

3. RECEIVERS ⬿167—RIGHTS OF ACTION OF RECEIVERS.

It is the general rule that a receiver cannot maintain an action on an obligation which the original party to whom it ran could not have maintained.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 320; Dec. Dig. ⬿167.

Actions by and against receivers in federal courts, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.]

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

---

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the Graham Paper Company against the World Publishing Company, Limited, with ancillary bill by Samuel F. Heaslip, receiver, against Moses Hollander. Decree for receiver, and defendant appeals. Reversed.

Under a bill filed on the 14th day of May, 1908, by the Graham Paper Company against the World Publishing Company, Limited, the appellee was on the same day appointed receiver of the property of the latter company, and was authorized to continue the business of that company, which was that of publishing a newspaper. Under authority conferred by an order made in that case, the appellee, on November 9, 1909, filed in the same court what was styled a dependent and auxiliary bill against the appellant and others, averring, among other things, that each of the defendants therein subscribed for a stated number of shares of the capital stock of the World Publishing Company, Limited, and paid on account of their said subscriptions stated sums of money—appellant's subscription being for five shares, upon which $50 had been paid—leaving due from them stated sums or balances, and that, in consequence of the fact that the liabilities of the World Publishing Company, Limited, largely exceed the value of its assets, it was necessary to collect said unpaid balances. That bill prayed that the plaintiff therein have judgment against each of the defendants named therein for the sums of money found to be due by each, with interest thereon from May 14, 1908. The court overruled a demurrer of the appellant to this bill, which set out, among other grounds, that the plaintiff therein has, to enforce the payment of said alleged debt, a complete and adequate remedy at law, and that the defendant has, under the Constitution of the United States, the right to have the fact of his indebtedness vel non tried before a jury; the amount in controversy exceeding the sum of $20, as appears by the bill herein. Thereafter the appellant filed a plea, which averred as follows:

"This defendant, not confessing any of the matters contained in the bill of complaint to be true, for plea to so much of said bill as seeks to hold this respondent for an alleged subscription to the capital stock of the World Publishing Company, Limited, of which complainant herein is the receiver, does plead thereto and say: Defendant admits that he signed the subscription list of the World Publishing Company, Limited, prior to said company being chartered and organized; that his said subscription was upon the following conditions, to wit: 'Whereas, the World Publishing Company, of New Orleans, La., is to be organized and incorporated under the laws of the state of Louisiana, with a capital stock of $500,000, the undersigned subscribe to the capital stock of said corporation for the number of shares set opposite their respective names, each share of the stock representing the par value of $100, and to be paid for as follows: Five (5%) per cent. of the stock subscribed by us, respectively, to be paid in cash; five (5%) per cent. to be paid within ten days from the organization of said corporation. And we obligate ourselves to pay the balance of our subscription upon the call of the board of directors of said corporation on the following conditions: First. That no call of the board of directors for the payment of the balance due on said stock shall exceed forty (40%) per cent. of the face value thereof. Second. That no call shall be made until after thirty days' notice by publication or a letter addressed to the subscriber at his last known place of residence. Third. That the directors shall make their calls not less than thirty days apart. Fourth. That no call shall be made until two hundred and fifty thousand dollars, or half of the capital stock, shall have been subscribed.'

"Defendant shows that the charter of the World Publishing Company, Limited, was passed before John Marshall Quintero, notary public, of this city, on the 6th day of June, 1907; that said charter contained, inter alia, the following provision: 'The capital stock of said corporation has been and is hereby fixed at the sum of five hundred thousand dollars, to be represented by five thousand shares, of the par value of one hundred dollars each. The said stock shall be paid for in cash, property, or labor done, and no cer-

tificate of stock shall be issued until payment is made. The said corporation shall be authorized to organize when fifty thousand dollars shall have been subscribed, and shall be a going concern when two hundred and fifty thousand dollars shall have been subscribed, to be paid for in cash, as and when called for by the board of directors.'

"This defendant avers that, in disregard of the conditions written into said subscription list, and upon the basis of which he subscribed, and in violation of the provisions of the charter of the said the World Publishing Company, Limited, the board of directors of said corporation, without having secured legitimate subscriptions to the amount of $250,000 of the capital stock, as called for by the subscription list and the charter, and which amount should have been honestly subscribed by responsible bona fide subscribers, the said directorate informed and advised your respondent, and announced to the stockholders and to the public generally, that the requisite amount of the capital stock, under the charter, to wit, the sum of $250,000, had been fully and honestly subscribed for, when as a matter of fact, to the knowledge of the said board of directors, the bona fide subscription to the capital stock of said corporation was a sum much less than $250,000, to wit, $168,000 or less, and that, though the said directors knew the facts as recited, nevertheless they concealed the same from your respondent; that, in accordance with said false declaration, that the amount of subscription required by the charter had been secured, said directors proceeded to issue calls upon respondent and all other stockholders similarly situated, for the payment of his and their stock subscriptions; that your respondent, being ignorant of the true condition of the subscriptions and the corporation's affairs, and relying upon the honesty and integrity of the directors of the said the World Publishing Company, Limited, and upon their declaration of the full subscription, as aforesaid, this respondent paid the sum of $50; that, after the final announcement by said directorate that the requisite amount of the capital stock had been subscribed for, they commenced the business of publishing a newspaper, and in violation of defendant's contract of subscription and the provisions of the charter of the said the World Publishing Company, Limited, they proceeded to collect subscriptions from this respondent and from other subscribers to said stock; that within a brief period after the commencement of business, through the negligence and mismanagement of the officers and directors of the said the World Publishing Company, Limited, the said company was forced into the hands of a receiver, and your respondent learned thereafter that one of the causes of the failure of the said company was the fact that the said directors had violated the conditions and obligations embodied in the contract of subscription, as well as the charter provisions of the corporation as above set forth; that, under the law, it was the duty of the said the World Publishing Company, Limited, to obtain bona fide subscriptions to the full amount of $250,-000, before commencing business; that your respondent's said contract of subscription and his obligations thereunder were conditioned upon said directors obtaining bona fide subscriptions for the full amount of $250,000; that said contract of subscription became binding upon your respondent only after the full amount, as aforesaid, had been subscribed; that the obtention of the full amount of said subscription, as hereinbefore recited, was a condition precedent to any liability on the part of your respondent, arising out of his subscription; that the failure of the said the World Publishing Company, Limited, to obtain honest and bona fide subscriptions to the amount of $250,-000 released your respondent from any liability to the said the World Publishing Company, Limited, or to its receiver.

"All of which matters and things this defendant avers to be true, and he pleads non indebitatus to said plaintiff's bill, and prays the judgment of this honorable court whether he should be compelled to make any other or further answer to said bill, or to so much of said bill as hereinbefore pleaded to, and prays to be hence dismissed, with his costs and charges in that behalf most wrongfully sustained."

Following the overruling of this plea, a decree pro confesso, and afterwards a final decree, were entered against the appellant.

Henry L. Lazarus and David Sessler, both of New Orleans, La. (Herman Michel and Eldon S. Lazarus, both of New Orleans, La., on the brief), for appellant.

George Denegre, Victor Leovy, and Henry H. Chaffe, all of New Orleans, La., for appellee.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

WALKER, Circuit Judge (after stating the facts as above).
[1] We are not of opinion that the court was in error in overruling the above-mentioned demurrer. The bill to which it was interposed was auxiliary to the original suit in which, by means of a receivership, the court had acquired possession of the assets of the World Publishing Company, Limited, for the purpose of applying them to the payment of its debts. This enabled it to cause a debtor to that corporation who was within reach of its process to be brought into the original cause, to the end that his debt might be ascertained and payment coerced. It was for the court, in its discretion, to decide whether it would determine for itself all claims of the corporation whose estate it was administering, or would allow them to be litigated elsewhere. It was within its power to hear and determine all controversies regarding such claims, at least in so far as it could acquire jurisdiction of the persons of those who were parties to such controversies, though the questions thus collaterally involved were of a purely legal nature. White v. Ewing, 159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67; Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815; Bottom v. National Ry. Building & Loan Ass'n (C. C.) 123 Fed. 744; Peck v. Elliott, 79 Fed. 10, 24 C. C. A. 425, 38 L. R. A. 616; Ross-Meehan Brake Shoe F. Co. v. Southern Malleable Iron Co. (C. C.) 72 Fed. 957. It could not have so dealt with a purely legal demand, if the bill which asserted it had not been an ancillary or auxiliary one, but was an original suit brought by a receiver who derived his authority from a court of another jurisdiction. Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380; Fidelity Trust & Safe Deposit Co. v. Archer, 179 Fed. 32, 103 C. C. A. 16.

[2] The plea which was adjudged to be insufficient disclosed that the stock subscription liability which the auxiliary bill asserted was evidenced by a written contract by the terms of which nothing was payable or demandable until half of the authorized capital stock of the corporation, to wit, $250,000 thereof, shall have been subscribed. It further disclosed that the charter of the corporation contained the provision that "the said corporation shall be authorized to organize when fifty thousand dollars shall have been subscribed, and shall be a going concern when two hundred and fifty thousand dollars shall have been subscribed, to be paid for in cash, as and when called for by the board of directors," and that the only payments on his subscription by the appellant were made after the directors of the corporation had informed and advised him, and announced to the stockholders and to the public generally, that the requisite amount of stock, to wit, $250,000, had been fully and honestly subscribed for, when as a matter of fact,

to the knowledge of the directors, only $168,000 or less was subscribed for, and that the appellant's payments were made in reliance upon the truth of said statements by the directors and in ignorance of the fact that the amount of stock required by its charter to be subscribed before the corporation was entitled to be a going concern was not subscribed. It is to be noted that neither in the plea nor elsewhere in the record are there any averments as to the circumstances of the accrual of any of the claims against the corporation for the satisfaction of which the asserted stock subscription liability is sought to be enforced. Nothing is disclosed to negative the conclusion that all the claimants had the dealings upon which their claims are based with full knowledge of the real facts, including the falsity of the statement made by the directors as to the amount of stock subscribed for, and the making of his payments by the appellant in reliance upon those statements and in ignorance of their falsity.

The liability to which the appellant subjected himself by signing the stock subscription agreement was a contract liability. That liability was expressly made a conditional one. When it is sought to recover of the appellant the amount he thereby conditionally obligated himself to pay, he is entitled to stand on the terms of his contract, to set up the condition it expressed, and to avail himself of the fact that that condition has not been complied with, unless he has waived such compliance or estopped himself from claiming the benefit of the condition.

There would be some support for a claim that the appellant had waived compliance with the condition, if, with knowledge that it had not been complied with, he had manifested his consent to the corporation becoming a going concern by making a payment or payments on his subscription in response to calls therefor, or had acquiesced or participated in the conduct of the undertaking by accepting a dividend or other benefit accruing therefrom. Such a state of facts is not disclosed. It is not made to appear that the appellant did anything as a stockholder or as a subscriber for stock, except to make payments on his subscription in reliance in good faith on a false representation made to him that there had been a full compliance with the condition upon which his liability to pay was to accrue. A payment made in such circumstances is not at all inconsistent with a continued and unchanged intention on the part of the subscriber to insist upon the condition expressed in the subscription contract. "A waiver exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right." 40 Cyc. 259. The appellant cannot be held to have waived a compliance with the condition expressed in the contract sought to be enforced by his making a payment or payments which, without fault on his part, were induced by a false representation that the condition had been complied with. A payment made in such circumstances does not indicate an intentional relinquishment of the right to require a compliance with the condition which was made a prerequisite to the accrual of any obligation to pay anything.

[3] The rule generally applicable is that a receiver cannot maintain an action upon an obligation running to the original party which the

latter could not have maintained. High on Receivers (4th Ed.) §§ 204, 205. It may be assumed, without being decided, that when the demand is sought to be enforced by the receiver for the benefit of creditors of the original obligee the receiver may avail himself of an estoppel upon the defendant of which such creditors were the beneficiaries, though the defendant had not estopped himself in favor of the party with whom he contracted. However this may be, neither the creditors nor the receiver as their representative can sustain a claim that the defendant is estopped to deny the liability asserted against him without showing that the creditors extended credit or otherwise altered their position for the worse in reliance upon something the defendant did or omitted to do. An estoppel in their favor could not arise as a result of conduct of another upon which they in no way relied or acted to their prejudice. In the absence of any showing that the creditors relied upon and were misled by the appellant's conduct, it is not to be assumed that there was a state of facts giving rise to an estoppel in their favor. The pleadings in the case contain no allegations of facts requisite to support such a claim of estoppel. As above indicated, for aught that appears, the creditors may have had their dealings either in ignorance of what the appellant had done or with knowledge of the real facts, being fully aware that the payments by the appellant on his stock subscription were made in such circumstances as not to indicate a consent by him for the corporation to become a going concern before the stipulated amount of capital stock had been subscribed.

The conclusion is that the plea disclosed the existence of a valid defense to the demand sued on, and that its averments do not show that the appellant had waived that defense or had estopped himself to set it up. Livesey v. Omaha Hotel, 5 Neb. 50; Newport Cotton Mill Co. v. Mims, 103 Tenn. 465, 53 S. W. 736; Katama Land Co. v. Jernegan, 126 Mass. 155; Marion Trust Co. v. Blish, 170 Ind. 686, 84 N. E. 814, 85 N. E. 344, 18 L. R. A. (N. S.) 347; Exposition Railroad Co. v. Canal Street Railroad Co., 42 La. Ann. 370, 7 South. 627; Bray v. Farwell, 81 N. Y. 601. The court was in error in adjudging that the plea was insufficient.

It follows that the decree appealed from must be reversed. The cause will be remanded, with leave to the appellant to file an answer to the bill of the appellee, the subsequent proceedings to be in conformity with the equity rules now in force, the appellee or any creditor whose demand is sought to be enforced in the main suit to be afforded the opportunity of controverting any matter of defense set up in the answer, or to show the existence of any facts entitled to be given the effect of a waiver by the appellant of any such matter of defense or of an estoppel upon him to set it up.