JOHNSON *v.* DE SOTO HARDWOOD FLOORING CO.

*(Nashville,* December Term, 1933.)

Opinion filed January 13, 1934.

146

CANADA & RUSSELL, of Memphis, for appellant.

ARMSTRONG, McCADDEN & ALLEN, of Memphis, for appellee.

MR. JUSTICE COOK delivered the opinion of the Court.

The complainant, owner of shares in the defendant corporation, alleged fundamental amendment of the charter without his approval and sued to recover the value of his stock. The chancellor sustained defendant's demurrer and dismissed the bill because (1) the modification or amendment of the charter was not fundamental and (2) because of laches, waiver, and abandonment of the right to withdraw from the corporation under the provision of section 2060 of Shannon's Code. The complainant appealed from the decree of the chancellor, and assigned error.

It is shown by the bill that the capital stock of the company was divided into 1,500 shares of $100 each. The complainant owned 200 shares. S. C. Major owned 322½ shares, R. A. Taylor 892½ shares, and J. J. Nieman 75 shares. Prior to 1930, complainant was vice president of the company, and received a salary of $350 a month.

At a stockholders' meeting in March, 1930, a resolution supported by Major, Nieman, and Taylor was adopted authorizing an amendment of the charter so as to provide for issuance of 750 shares of 7 per cent. preferred stock, the shares to be of $100 par value. The charter was accordingly amended, and 105 shares of the preferred stock were issued and are outstanding. It is shown by the bill that complainant voted against the amendment and objected to issuance of the preferred

stock. The amendment not only increased the capital of the company, but created the preferred stock, with priority in the distribution of earnings, and in the distribution of assets upon liquidation over complainant's rights as a common stockholder.

The statutory provision, section 2060 of Shannon's Code, which was embodied in the charter, provides:

"If the amendments or modifications, being fundamental, are accepted by the corporation . . . in a general meeting to be called for that purpose . . . any stockholder not agreeing to the acceptance of the modification, shall cease to be a stockholder, and the corporation shall be liable to pay said withdrawing stockholders the par value of their stock, if it is worth so much; if not, then so much as may be its real value in the market on the day of withdrawal of said stockholders as aforesaid. But the claims of all creditors are to be paid in preference to said withdrawing stockholders."

The amendment of the charter was fundamental, and in such case the statute assured complainant, as a dissenting stockholder, the right to withdraw from the company and demand the value of his shares of stock. *Newport Cotton Mill Co.* v. *Mims,* 103 Tenn., 465, 53 S. W., 736. But the statute contemplated assertion of the right to payment for the stock when the objectional modification was made. It was supposed that stockholders not agreeing to the modification ceased to be stockholders, and would then assert their right to demand and receive the value of stock held by them. Complainant did not avail himself of the right. After the amendment was made, he affiliated as a stockholder and maintained his status with the corporation as vice president.

It is shown in the bill that the change was made in March, 1930, prior to which time complainant was vice president of the company, and for services received a salary of $350 a month. While he continued in the office of vice president, his salary was reduced to $100 a month in August, 1932, and he charges that he was required to do common labor in the mill. But he says in September, when he protested to his associates, his pay was increased to $150 a month. In January, 1933, it is shown that he was informed by Mr. Taylor that he would not be re-elected vice president, and, if he retained a position with the company, he would be required to work as a laborer at $100 a month. For that reason he states that he quit. This narrative of facts is followed by the statement that:

"Since being let out by the corporation, which was the effect of the notice given by Mr. Taylor that he would have to continue the hard work at a less salary, which he was unwilling and unable to do, he has learned of his rights as a dissenting stockholder only within the last ten days when conferring with his counsel about the affairs of the corporation, and when the amendment and its history was brought to the attention of his counsel. Thereupon complainant made immediate demand upon the defendant corporation for the payment of said $20,000."

Mere delay in the assertion of a legal right does not of itself work estoppel, but complainant waited the outcome of the amendment, and profited by his status as a stockholder so long as available. It must be presumed that as vice president of the company he knew of the charter provision upon which he now relies, and waived his right to withdraw, and by subsequent conduct acquiesced in the amendment. He waited from March 18,

1930, until January, 1933, without suggesting an intention to withdraw. Whether his delay and acquiecence in the arrangement barred the right that he could otherwise assert was a question addressed to the sound discretion of the chancellor. The chancellor was of opinion that complainant failed to show good faith and exercise reasonable diligence, and that his conduct amounted to abandonment of the right given dissenting stockholders in the circumstances presented by the bill. There is nothing on the face of the bill to overcome the presumption of waiver by laches.

After acquiescence for three years, it must be concluded that complainant waived his right to withdraw and elected to retain his stock and hold his position with the company and then attempted to revoke his election when the company reduced his pay.

The action of the chancellor sustaining the fourth and all subsequent grounds of the demurrer is affirmed.