LE MASTER v. HAILEY et al.   (No. 765.)

(Court of Civil Appeals of Texas.   Amarillo.
April 10, 1915.   Rehearing Denied
May 8, 1915.)

1. CORPORATIONS ☞121 — SALE OF STOCK —
FALSE REPRESENTATIONS — SUFFICIENCY OF
EVIDENCE.

In an action to cancel a contract for the purchase of corporate stock and a note given for the price, evidence held sufficient to show that defendant, in procuring the note and contract, made false representations as to the

amount of the corporation's capital stock and his right to sell it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. ☞121.]

2. CORPORATIONS ☞121 — SALE OF STOCK — CONSIDERATION—SUFFICIENCY OF EVIDENCE.

In an action to cancel a contract for the purchase of stock, and a note given for the price, evidence held sufficient to show that such note and contract were unsupported by consideration.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. ☞121.]

3. EVIDENCE ☞434—PAROL EVIDENCE AFFECTING WRITINGS—MISREPRESENTATIONS.

In an action to cancel a contract for the purchase of stock and a note given for the price, the fact that the contract recited that defendant was selling stock in a life insurance company, which was a $1,000,000 corporation, did not render inadmissible, as varying the writing, parol evidence that such was not the case.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2005–2020; Dec. Dig. ☞434.]

4. APPEAL AND ERROR ☞879—REVIEW.

Where a party defendant assigned no error and appealed neither against plaintiff, who secured judgment, nor its codefendant, the appellate court could not review the judgment against it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3581–3583; Dec. Dig. ☞879.]

Error from District Court, Cottle County; Jo. A. P. Dickson, Judge.

Action by J. R. Hailey against Mike C. Le Master and others. Judgment for plaintiff, and the named defendant brings error. Affirmed.

Cooper & Merrill, of Houston, and Lumpkin & Harrington, of Amarillo, for plaintiff in error. J. M. Hawkins and J. M. Whatley, both of Paducah, G. E. Hamilton, of Matador, and M. M. Hankins, of Quanah (John W. Veale, of Amarillo, of counsel), for defendants in error.

HUFF, C. J. This action was brought by defendant in error J. R. Hailey against the plaintiff in error, Mike C. Le Master, the Quanah National Bank, Citizens' National Bank, Lone Star Life Insurance Company, and the First State Bank of Cottle County. This action was originally instituted by the defendant in error Hailey against the various parties to cancel a note and a certain contract to buy stock in the Lone Star Life Insurance Company, alleging a failure of consideration for the note and in the contract and fraudulent representations in obtaining the same.

The various parties answered, and, upon trial before the court without a jury, a judgment was rendered in favor of Hailey, canceling the note and the contract to purchase stock in the insurance company, and that the Citizens' National Bank take nothing on its cross-petition over against Hailey, but rendered judgment in favor of the Citizens' National Bank against Mike C. Le Master for the amount of the note, with interest and attorneys' fees.

The State National Bank at Paducah was dismissed by Hailey, and judgment was also rendered against the Lone Star Insurance Company in favor of Hailey to cancel the note and contract above mentioned. Mike C. Le Master alone sued out a writ to this court, making Hailey, the Citizens' National Bank of Quanah, and the Lone Star Insurance Company, and the First State Bank of Cottle County defendants. Le Master alone assigns error in this court.

The facts will sufficiently present the issues without a further statement of the pleadings. The court was authorized to find that Mike C. Le Master on the 25th day of March, 1910, approached Hailey to sell him stock in the Lone Star Life Insurance Company; that he represented himself to be the agent of said company and authorized to sell such stock. He represented that he was selling stock in a corporation of $1,000,000 capital stock, and did not tell him at that time that the capital stock had been reduced to $100,000. The plaintiff Hailey also testified:

"I am the plaintiff in this case. I know the defendant Mike C. Le Master. I met Mr. Le Master in Paducah. Le Master represented to me that he was agent for the Lone Star Life Insurance Company, and that said company was being organized as a $1,000,000 corporation, and that all the stock had been sold, except a small amount he had. I relied on the statement of Mr. Le Master, in subscribing to the stock. I was to receive the stock from the company. Mr. Le Master told me the stock would be delivered about the 1st of October. I have never received the stock. I gave my note for $1,000, and signed a subscription note for $1,500. I have never offered to pay the remaining $1,500, and the stock has never been transferred to me. There was no consideration for the $1,000 note I signed. At the time suit was filed, I knew I could not get the stock. Mr. Hawkins has a letter from the company, stating that Le Master was not the agent. I was ready at any time the stock was tendered. I am now ready to pay the $1,500 and take the stock, if I could get it according to contract. The Lone Star Life Insurance Company nor any one else ever notified me that all the capital stock was paid and my stock was ready. The Lone Star Life Insurance Company, Mike C. Le Master, L. H. Morgan & Co., or the First State Bank never tendered me any original stock in the $1,000,000 corporation, and no one ever tendered me any kind of stock until after the suit was brought. I never received any notice that the capital stock of the Lone Star Insurance Company would be reduced from $1,000,000 to $100,000. The first knowledge I ever had that the company did not recognize Le Master as their agent was from Mr. Spradley. The first written knowledge was a letter to Whatley & Hawkins. The letter stated that my subscription was rejected."

At that time, from the representation so made to Hailey by Le Master and his associate, he executed a note, made payable to himself or order, and indorsed this note to Le Master, and also entered into a written contract wherein it is recited that L. H.

Morgan & Co., of Dallas, Tex., are promoting the organization of a life insurance company, which has been chartered under the laws of the state of Texas, under the name of the Lone Star Life Insurance Company, with an authorized capital stock of $1,000,-000, and a paid-up capital of at least $100,-000, and a net surplus of $50,000 paid up and free from promoting and organization expenses. He subscribed for 100 one-tenth shares, of a par value of $10 each, of the capital stock of said insurance company, reciting that he agreed with the company and with L. H. Morgan to pay the sum of $2,500 as follows: The sum of $1,500 to be paid in money or in securities, satisfactory to the insurance department of Texas, to said Lone Star Life Insurance Company, at any time after October 1, 1914, reciting that he would pay immediately upon notice from Morgan & Co. that the stock had been subscribed in good faith to amounts and rates netting the company at least $100,000 and at least $50,-000 of surplus, in the aggregate when paid. The remaining $1,000 he agreed to pay and does pay concurrently with this subscription to the said L. H. Morgan & Co. in consideration that their agreement theretofore recited and in lieu of any other further contribution to the expense of promoting and incorporating said company.

Le Master, the evidence shows, was acting for Morgan & Co. in the sale of the stock. The facts show that in the early part of 1909 Morgan & Co. purported to be representing and had their contract with certain Dallas parties who were to organize and incorporate under the name specified. The facts from the officers of that company establish that Morgan & Co. proceeded to represent or to sell stock in the proposed organization company, and that the officers having learned through outside sources that they were charging an unreasonable sum for promotion, and having failed also to get the man whom they had selected as president to take the position, they decided to abandon the matter; and the evidence is sufficient to show that all the contracts so taken were destroyed, and the checks that had been paid were returned to the parties giving them, by the proposed incorporators of the insurance company, and also turned back the charter or organization up to that time to Morgan & Co. It further appears that after this Morgan & Co., during the year 1909, by, as the witnesses say. some bogus proceedings, secured the issuance of a charter for $1,000,000 by issuing stock to certain directors, and that this organization was illegal and invalid, but that Morgan & Co., still pretending to represent the insurance company, proceeded to sell its stock in the corporation, using the name of the present holders of the corporation stock and officers thereof. Again hearing of this fact, they called in Morgan & Co. before them on the 5th day of March, 1910, and directed them to sell no more stock, and objected to their name being used as it had been, destroying various contracts of subscription, and returning the checks of parties who had subscribed, and decided that at that meeting they would organize a corporation with $100,000 capital stock, with $50,000 surplus, and so notified Morgan & Co., and that there was that amount already subscribed, and there was no more stock to sell. Le Master was at this meeting, and, while he states that he did not hear all that was said, the officers of the company state they think he was present and heard the declaration. After this the insurance company was in fact organized and a charter issued for $100,-000 in October, 1910; but after March 5, 1910, and on the 25th day of March, as above stated, Le Master purported to sell this stock to Hailey. The officers of the insurance company disclaim any responsibility for his act, and declare that he or Morgan had no authority to sell the stock, and they were so instructed not to sell on the 5th of March, as the stock had then all been subscribed and there was none to sell. It appears that, when knowledge was brought to the insurance company of the transaction, they disclaimed any interest in the contract and notified Hailey, together with others, who had been induced to subscribe for stock under the same direction, that there was no stock to issue; that it had all previous thereto been subscribed. There is some testimony in this case that after the suit was filed, the bank holding the note and the contract had stock which had been issued to Hailey which it was instructed to deliver upon payment of the notes and contract. The stock itself, as we understand, is not in evidence, and we do not know just when it was issued, but the facts warrant the inference that it was issued before the company was reorganized for $100,000. Hailey relied; upon the representations made by Le Master and upon representations by Ledbetter in his letter. He was willing to purchase the stock if the corporation had been in a situation to issue it, and would have done so and was ready and willing to do so; that he was induced to give the note and execute the contract upon the representations above set out. Hailey instituted this suit against the several parties on the 3d day of December, 1910, and citation was served on them.

J. E. Ledbetter was president of the Quanah National Bank and wrote a letter to whom it may concern, recommending Le Master and his associate, and recommending the Lone Star Insurance Company as being a safe and sound investment. After receiving this letter and showing it to Hailey, together with his representations, he induced Hailey to sign the note and execute the contract above mentioned. After Le Master procured the $1,000 note, which represented

the promotion charges mentioned in the contract, he returned from Paducah to Quanah and negotiated with J. E. Ledbetter, the president of the Quanah National Bank on March 30, 1910, the sale of this note, and who gave him therefor two deposit slips, for $500 each, representing the amount of the note, which deposit slips were made payable to the order of himself, with the agreement, however, that the money so deposited should not be paid until after the note executed by Hailey became due, Le Master stating to Ledbetter that he had been to Paducah selling insurance, and Ledbetter substantially admits that, while he did not actually know that the note had been given for stock to Le Master, he thought it had been so obtained. After the institution of this suit by Hailey against the Quanah National Bank, the Quanah National Bank went into liquidation, and the Citizens' National Bank came into possession of the note with other assets; and, after that bank came into possession of the assets, they paid off the deposit slips above mentioned. These certificates were paid November 29, 1910, and January 17, 1911. Further than above recited, there is no evidence that we find in the record showing that the Citizens' National Bank paid value for the note. The certificates of deposit on their face do not purport to represent payment for the note. The evidence does not show, as we understand it, that the Citizens' National Bank had actual knowledge of the pendency of the suit at the time they purchased the assets of the bank, or had actual knowledge of Hailey's contention that a fraud had been perpetrated on him in procuring the note.

[1-3] Le Master testifies also that he had an arrangement with Morgan & Co., and was so instructed by Morgan & Co., that they would not take the notes of parties contracting to purchase stock in the insurance company, but that he must either send the cash, which represented the amount paid for promotion of the company, or send a deposit slip, and he states that he, in accordance with instructions, sent these deposit slips to Morgan & Co. There is no evidence in the record, that we find, that Morgan & Co. actually collected the money on these slips, or that the Citizens' National Bank actually paid it to Morgan. The indorsements on the deposit slips show that one of them was paid through clearing house to Farmers' State Bank of Quanah and the other paid the Farmers' & Merchants' National Bank of Ft. Worth. The note executed by Hailey is dated March 25, 1910, payable to himself or order, and indorsed by him to Mike C. Le Master, who indorsed it to the Quanah National Bank, due December 1, 1910, bearing interest at the rate of 6 per cent. from date. We think the evidence in this case is amply sufficient to show that Le Master, in procuring the note and the contract, falsely represented the corporation that he was then seeking to organize, as to the amount of its capital stock, and also his right to sell the stock therein. It clearly appears from the evidence, with substantially but little contradiction, if any, that Le Master knew that he was not authorized to sell the stock in the corporation which was agreed to be organized on March 5, 1910; in fact, he had been instructed that all the stock in the proposed corporation was subscribed, and that he had nothing to sell. The evidence is not only sufficient to show he made misrepresentations, but he procured the note and the contract without any consideration therefor, and for that reason the facts, we think, are amply sufficient to sustain the judgment in so far as Le Master is concerned, and the assignments of plaintiff in error, to the effect that defendant in error cannot dispute the recitations in the written contract, are not well taken. The representations made in order to induce another to enter into a contract are admissible to show that a fraud was practiced upon the maker of the contract in order to induce him to sign the same. The mere fact that the contract recited that he was selling stock in the Lone Star Life Insurance Company did not make that fact true; and the fact that the company was a $1,000,000 corporation instead of $100,000 corporation did not make that fact true. It was in its nature a misrepresentation of the fact. Le Master had no right to sell the stock, but was expressly forbidden to do so, and we think the fraud is clearly shown in inducing defendant in error to enter into the contract. The authorities and the principle upon which this holding is made will be found in U. S. Gypsum Co. v. Shields, 106 S. W. 724, and 101 Tex. 473, 108 S. W. 1165. This court, in Commonwealth, etc., v. Cator, 175 S. W. 1074, and other authorities which it is not thought necessary to cite, follow the above cases.

The judgment, we think, should be affirmed, canceling the note and contract as to the insurance company and the bank.

[4] The Citizens' National Bank of Quanah is not here by assignment of error or by appeal, and has not filed assignments or appeal against its codefendant, as required by the rules and authorities. Such being its condition, we are not authorized to consider the question as to whether or not the court was in error in rendering judgment against it canceling the note and contract. Gillespie v. Crawford, 42 S. W. 625; Hunter v. Herndon, 12 Tex. Civ. App. 637, 35 S. W. 80. There are several interesting and delicate questions presented by the record with reference to its right to recover on its cross-action against Hailey; but, as the record now stands, we do not feel authorized in disturbing the judgment of the court below as to the bank.

It is assigned by Le Master also that the bank was not entitled to a judgment over against him on his indorsement. This assignment is overruled. We think the au-

thorities amply sustain the action of the court in giving judgment in favor of the bank over against Le Master.

Having found the facts as above, and the record in the condition in which it is, we believe the case should be affirmed; and it is accordingly so ordered.