WRATHER et al. v. PARKS.  (No. 1739.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 12, 1921.)

1. Bills and notes 527(2)—Agreement to take interest in mine in payment of note held not shown.

In action on note, evidence held to sustain finding that plaintiff did not agree to take an interest in a mine, nor accept certificate of shares in a corporation formed to take over the mine, in payment of balance due on note.

2. Bills and notes 432—Issuance of stock of corporation having no assets no consideration for credit on note.

Issuance to plaintiff of stock in corporation formed to take over a mine, which corporation had no money paid in and no assets, the mine never having been transferred to the corporation, held without consideration, and therefore not performance of an agreement to transfer to plaintiff, payee of a note, in payment of

balance due on note, an interest in the mine or a certificate of stock, for the amount due on the note, in a corporation to be formed to take over the mine.

**3. Corporations ⊕84—Subscriber released if corporation is formed for greater or less amount of stock than agreed on.**

Subscriber for stock, who does not consent to a change in the subscription, is released if the corporation, which is afterwards formed for a greater or less amount of capital stock than agreed upon, seeks to enforce the subscription.

**4. Estoppel ⊕90(6)—Payee not estopped to deny maker's compliance with agreement to give payee interest in mine in payment of note.**

Where makers agreed to transfer a specified interest in a mine or organize a corporation with specified amount of corporate stock, and issue payee stock therein in payment of balance due on note, payee's acceptance of stock and participation in the affairs of the corporation, as an officer and stockholder, did not estop him from claiming that makers had not complied with their agreement in that they had organized a different corporation, with much greater amount of authorized capital stock than that contemplated by the agreement, where such acts by payee did not cause makers to do anything they would not have done if he had not so acted.

**5. Appeal and error ⊕1058(1)—Exclusion of testimony harmless in view of other testimony to same effect.**

Exclusion of certain testimony was harmless where there was other testimony, the substantial effect of which was the same as that excluded.

**6. Evidence ⊕129(3)—Testimony held admissible to corroborate testimony to same effect.**

In action on note defended on ground that payee had taken, in payment of balance of note, stock in certain corporation of which he had been named a director, where payee denied knowledge that he had been named a director in such corporation, testimony of another named director that he had no knowledge of having been so named, *held* admissible in corroboration and as showing the method and scheme in launching the corporation.

**7. Appeal and error ⊕1052(2)—Parol testimony as to lease harmless in view of subsequent admission of lease.**

Admission of parol testimony as to contents of lease, if error, was harmless, where the lease itself was subsequently introduced in evidence.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by L. P. Parks against J. D. Wrather and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Kimbrough, Underwood, Jackson & Simpson, of Amarillo, for appellants.

C. E. Gustavus, of Amarillo, for appellee.

HUFF, C. J. The appellee, Parks, sued J. D. Wrather, J. R. Wrather, and W. M. Rice on a promissory note for $5,000, bearing interest at the rate of 8 per cent., and providing for 10 per cent. attorney's fees, alleging a credit on the note of $3,000 as of date April 3, 1918. The note bears date March 15, 1918. There was also indorsed on the note the following: .

"It is agreed that L. P. Parks is to take $2,000.00 interest in mine at Webb City, Mo., and the other $2,000.00 on the note to be applied. [Signed] J. D. Wrather."

It is alleged substantially in the original petition that this indorsement was made by J. D. Wrather on the note without the knowledge or consent of L. P. Parks, and was fraudulently so indorsed for the purpose and design of trying to make it appear the note was fully discharged, etc. The ·defendants answered by general denial, and specially that they had made full payment and settlement of the note, and that on the 3d of April, 1918, they paid to the appellee $3,000 cash, and at the same place and about a week later paid and discharged the remainder of the note by transferring and agreeing to transfer to appellee an undivided interest in certain mining property situated near Webb City, Mo., upon which they had acquired and then held a lease in the name of appellants W. M. Rice and J. D. Wrather; that they agreed that Parks should have an interest in the mining property and lease to the extent of $2,000, and that this understanding existed at the time the note sued on was executed by appellants, and that such agreement so indorsed on the note was entered in the presence of Parks and his wife. They further allege that subsequent thereto a corporation was organized in the state of Colorado, incorporating the Amarillo Lead & Zinc Company, for the purpose of taking over, controlling, and operating the lease of the mining company, and that after the charter was obtained, and the company organized, Parks, as part owner, claimed the right to be chosen as one of the directors, and it was agreed that he should receive a certificate of stock in said corporation for the amount of $2,000, in consideration of his interest in said property. They allege substantially that the certificate was issued and delivered to Parks and held by him.

The appellee replied by supplemental petition, denying that he agreed to take an interest in the Webb City proposition, and that if any transfer of interest therein was ever made to him it was without his knowledge or consent. He pleaded that any lease of such mining property held by Rice and Wrather was nonassignable, and that an interest therein could not be assigned to the appellee; also denied any connection with securing a charter from the state of Colorado

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

for the Amarillo Lead & Zinc Company; and denied that he was ever a director in the corporation, and that the using of his name was without his knowledge or consent. He also alleged that the incorporating of said company was a fraudulent scheme and device, and that the company never held or owned any lease or any mining property or had any assets or property of any character; that any stock in said company ever issued to him was without his knowledge and consent and never delivered. He alleged that, at the instance of J. D. Wrather, he attended some meetings, looking to the organization of the company, with R. B. Masterson, as president, in which H. W. Galbraith, W. E. Herring, and other prominent citizens of Amarillo would be interested, and that he did contemplate taking an interest in such company, but did not invest any money in the project, and the organization of any such contemplated company was never effected; that if there was any transfer or assignment in the lease by W. M. Rice and J. D. Wrather, or if any stock was issued to him in a company organized in Colorado, that it was without his knowledge or consent, and was an artifice, scheme, and conspiracy with an indorsement on his note by J. D. Wrather, including an inducement by said Wrather to attend meetings to fraudulently deprive him of the collection of the balance of his note. He alleges that the lease of mining property in Webb City, Mo., was of no value, and any agreement to take an interest therein was without consideration; that the property was represented as being very valuable, producing large revenues, and in fact that the mine could only be operated at a heavy loss. He alleges that the contract, if any made, was wholly without any consideration.

The record shows that there was a lease of some 70 acres of land near Webb City, Mo., for mining purposes, executed originally by the Osceola Lead & Zinc Mining Company and A. D. Hatton to one R. M. Clark. This lease also let with the land the mining plant, containing mills, mining machinery, and equipment. The lease further contained a provision that the rights and provisions herein granted to the lessee shall not be assigned or transferred to any other person or persons, firm or corporation, without the written consent of the parties of the first part (meaning lessors) had and obtained. Neither should the lessees sublet any of the land nor grant any rights and provisions without the consent in writing of the first parties, without first notifying said first parties of the name of the proposed sublessee or grantee, and of the terms and conditions of the proposed sublease or grant; that any sublease or grant made in the covenants of the terms of this lease should be wholly void, and all subleases and grants must be subject to the terms of the lease. This lease contract is dated the 1st day of September, 1917. On the 10th day of March, 1918, R. M. Clark assigned this lease to J. D. Wrather and W. M. Rice, both of Amarillo, and on the same day it is indorsed on the lease that the original lessors consent to the transfer and assignment by Clark, as set out.

The evidence shows that the appellants sought to obtain money for the purpose of operating the mine on the lease; that Mrs. Parks, wife of the appellee, was working in the office of J. D. and Dr. Wrather, who were engaged in the drug business in Amarillo; that she heard the discussion of the matter, and suggested that her husband would obtain some money from an estate in Missouri, and possibly they could get it from him. He did lend them the money, $5,000, for which they executed the note sued on, dated March 18, 1918, due in 90 days. It appears that after the execution of the note J. D. Wrather returned to Webb City, Mo., and wrote a letter to Mrs. Parks, a part of which, in effect, was that he was enthused over the prospect and the proposition that they had at that place, and that they contemplated incorporating for $75,000, and some other matters in connection with that. Apparently he made this proposition to Mrs. Parks:

"If you and Mr. Parks want in with us, we will let you have say $2,000.00 or $2,500.00, as we are now, that is, in this company, and put in or incorporate at $75,000.00, without further investment. I believe it will be a big thing for you, and if I didn't I would not say so. If you want it this way let me know at once and you can credit the note for $2,000.00 or $2,500.00, and when the company is incorporated we will issue you your stock fully paid. You could send receipt for the amount, or credit the note, in the presence of J. R. or Rice."

Mrs. Parks dated her letter and answer March 18, 1918:

"We received your letter this morning and feel sure you have a good proposition. Mr. Parks says he will put in either $2,000.00 or $2,500.00, and will let you know at once just how much. How much are you going to ask per share? Mr. Allen and Mr. Bert are glad of the chance to get in too. * * * Write us at once how much per share, etc., and we will then decide just how much to put in."

On April 3, 1918, the appellee, who was working at that time for the Avery Company, and says that he was in his working clothes, and that his hands were dirty and greasy, went into the drug store, and J. D. Wrather then said to him that he had the money to pay on the note and wanted to do so, and stop the interest, and said he could pay $3,000.00, and that he had the note in a pocketbook, and presented it to his wife to make the credit, and that Mr. Wrather took the note himself and wrote the credit; that the reason he did not make the credit himself was because his hands were dirty and greasy; that there was nothing said about taking the

stock or an interest in the mine at that time and no mention made of it; that he did not consent for Mr. Wrather to make the notation on the note which we set out in our statement of the pleadings heretofore, and that he knew nothing of his making that notation until after he started out of the house, when he saw the notation was made; that he made no mention of it at that time to Wrather or made no complaint. Mrs. Parks corroborated Mr. Parks in his statement that nothing was said at that time about making the notation and that she did not know that the notation had been made. They both testify positively that they never made any agreement to take an interest in the mine or stock in the corporation. Their testimony is controverted on this point by J. D. Wrather and a Mr. Allen, who was then working in the store, who say it was agreed to make the indorsement, etc. J. D. Wrather, Dr. J. R. Wrather, and Mr. Rice, it appears, employed an attorney in Colorado to secure a charter for an incorporation. The charter was obtained by three citizens of Colorado, Nichols, Taylor, and Wood. The corporation was to be known as the Amarillo Lead & Zinc Company. The object of the corporation formed was for the purpose of leasing, subleasing, buying, and otherwise acquiring mineral lands and oil lands and selling the same, and mining the same, or drilling for oil or gas thereon; to buy and sell and operate mining or drilling machinery, etc. The capital stock of the corporation was to be $200,000, divided into 200,000 shares, of the par value of $1 each, stock nonassessable. It was to consist of seven directors; J. R. Wrather, W. M. Rice, L. P. Parks, J. D. Wrather, R. M. Clark, J. E. Carpenter, and C. E. Gustavus. This charter was obtained on the 20th day of June, 1918. Parks and his wife both testified that they knew nothing of the obtaining of this charter at the time, and were not consulted in the matter, and that Parks was made a director without his knowledge or consent. It seems after getting the charter the appellants got out a prospectus, giving the name of the corporation and its purposes, its capital stock, and giving the names of the directors and officers. Both the appellee and his wife denied knowing anything of this prospectus. However, Wrather says that Mrs. Parks did know of it; that she called his attention in the proof that they had the name of Mr. Parks wrong. Some time in the summer, July or August, after obtaining this charter, there were various negotiations between the Wrathers and Rice on one side, and Masterson and Galbraith on the other. It appears that Masterson and his crowd owned mining property in Oklahoma, and the negotiations were to effect a consolidation or merger into one company, and it finally resulted in an agreement of consolidation into one company. Mr. Parks was present at some or several of the meetings, and especially the one in Judge Kimbrough's office, where the agreement appears to have been finally consummated. It was agreed substantially that they would continue the corporation in the name of the Amarillo Lead & Zinc Company, and each of the respective parties should hold one-half of the stock to be issued; that is, that the stock should be $200,000, $100,000 by Masterson and his crowd and $100,000 by Rice and his crowd. It was represented at one time that no stock had been issued by the Wrathers or Rice in the corporation as originally organized, but it was finally ascertained that as a matter of fact J. D. Wrather had a stock book, in which he had written up stock to some of the proposed stockholders, but that it all remained in the book, and had never been delivered, except possibly the stock to Parks. As to the delivery of this stock to Parks, there was a sharp conflict; Parks and his wife testifying positively that no stock was delivered to them, and others testifying that it had been delivered—that is, to Mrs. Parks—and that she had redelivered it to J. D. Wrather, who kept it in a separate envelope. At the meeting in Judge Kimbrough's office it was there determined that this stock must be all surrendered and destroyed; that otherwise it might show a double issue. On this occasion Parks was present, and one or more of the appellants stated that the stock would be destroyed, and that the stock to Mr. Parks had been delivered to him, and that he could do as he saw proper about it, or something to that effect, and that all of the stock, with that of Parks, was then destroyed or thrown into the wastebasket. This meeting was called for the purpose of perfecting the consolidation, and the old officers in the corporation were required or requested to resign, and were called for that purpose, and it seems that all of them did resign. The transfer of the lease of Masterson was to be made, and, as we understand, was made to the corporation. It seems that Judge Kimbrough called attention at the time to the provision of the lease held by Wrather and Rice that it could not be transferred without the consent of the original lessor, and they were to get up the paper effecting that transfer to the Mining Company, which had never been obtained. Judge Kimbrough says that some of the papers were turned over to him and held by him, but that all the necessary papers were not delivered to him, and that he never finally passed on the title and the necessary papers to effect the transfer, and as a result no stock was ever issued under the consolidation agreement, as had been agreed upon, and that nothing further has ever been done about it, since which time it appears that the appellants have ceased to work on the lease, and that as a result the lease has been forfeited and the machinery and land have gone

back to the original lessors. At this meeting it also appears that Parks had been named as one of the directors, and it is stated that in the new organization he possibly would have been entitled to have received $4,000 or $5,000 in stock, which it appears was never issued to him or to any one else. It does appear that after this meeting Mr. Rice appears to have been in Webb City, and claimed there was a deficiency in funds for the purpose of operation, and that he would draw a draft for some $700, and to secure this draft the members were to pay in proportionately to the bank a fund for meeting the draft; but it was understood at the time that if they would give their checks that they would not be paid, and it appears as a matter of fact none of the checks were paid, and no money was contributed by the stockholders to the fund. The effect of the appellee's testimony appears to be that he had contemplated entering into the company, and to take stock if it had been consummated with the other company, which had been attempted, as he regarded them as being strong men, and able to put the matter over; but, as it was never consummated, he paid nothing into it or agreed to do so. The case was tried before the court without a jury, and no conclusions of fact or of law were requested of the trial court.

[1, 2] The first and second assignments are to the effect that the judgment of the court is not supported by the evidence, and is contrary to the great weight and preponderance of the evidence. These assignments are objected to because they are prolix, multifarious, etc. Without discussing the assignments, we may say generally that the evidence we think sufficient to support a finding by the trial court that appellee, Parks, did not agree to take $2,000 interest in the mine at Webb City, or that the balance of the note should be paid by such interest. It is also sufficient to authorize the finding that appellee did not accept the certificate of shares in the corporation for $2,000 as a payment of the balance due on the note. If, however, there was an agreement to take an interest, we think the evidence sufficient to show it was not carried out by appellants, and that, if there was a certificate delivered, it was without consideration. It will be observed that the notation indorsed on the note by J. D. Wrather, April 3, 1918, is to the effect that Parks was to take a $2,000 interest in the mine at Webb City, Mo. This does not purport to be a subscription for stock in a corporation to be formed, or a contract obligating Parks to take stock in the corporation. It is to take an interest in a mine. This notation implies that the value of the mine is of some determinate value, inferable either from its cost price or its present value, and that Parks would of that interest or value take $2,000. The evidence is silent as to the value

of the mine. It is also shown that there was a lease of the mine in Webb City, which had been assigned to Wrather and Rice, together with certain mining machinery. There is no evidence that Wrather or Rice ever transferred or assigned to Parks such interest. It would, therefore, appear they did not comply with their agreement, if it was one. They would have to make a written assignment of the lease in order to be valid, and under the terms of the lease itself it would be required to obtain the written consent of the original lessor to such assignment, none of which was obtained. However, appellants seem to treat this memorandum as evidencing an agreement to take stock in a corporation to be formed, and, as part of the evidence establishing such agreement, relied upon a letter written by Mrs. Parks to J. D. Wrather. The proposition made by Wrather was: "If you and Mr. Parks want in with us we will let you have say $2,000.00 or $2,500.00, as we are now, that is in this company, and put in or incorporate at $75,000.00, without further investment." Mrs. Parks answered this letter that Mr. Parks said he would put in either $2,000 or $2,500, but inquired how much they were going to ask for shares, and again, "Write us at once how much per share, etc., and we will decide just how much to put in." This letter was written on March 18, 1918. On April 3d, the notation was indorsed on the note by Wrather quoted in the original statement. Parks and his wife say that this was done without their knowledge or consent, and that they did not know of it until after it was done, and that they never did agree to take the interest in the mine or the stock. This is disputed by Wrather and one Mr. Allen. On the 20th of June, 1918, Wrather and Rice employed a lawyer in Colorado to secure a charter in the state of Colorado for a corporation. He secured three citizens of that state to form a corporation, and the charter was for the purposes named, as above stated, and was for $200,000, divided into 200,000 shares, of the par value of $1 each. It is practically undisputed that Parks or his wife knew nothing of the obtaining of the charter at the time it was obtained, and did not participate in securing it, and knew nothing of it until afterwards. Appellee was named as a director in the charter, and this was done without his knowledge or consent. It is shown that after incorporating the Wrathers and Mr. Rice got out a prospectus, giving the capital stock of the concern and the names of the directors, one of whom was Parks. Parks and his wife both testified they knew nothing of this prospectus, but appellants testified they did know of it, and that Mrs. Parks corrected the name of her husband in the proof. If the facts should be sufficient to show that Parks was a subscriber to $2,000 of the capital stock of the corporation to be formed, then that in-

corporation, as shown, was to be for the sum of $75,000, and to operate the mine at Webb City owned by Wrather and Rice; that he was to hold $2/_{75}$ of the capital stock. The corporation as formed was for $200,000, and appellant contends a certificate for $2,000, which would have been only $1/_{100}$ of the capital stock of the corporation, satisfied the subscription and discharged the balance due on the note.

[3] A person who subscribes for stock in a corporation to be formed, and who does not consent to a change in the subscription, is not liable if the corporation which is afterwards formed seeks to enforce the subscription and is a different corporation from that contemplated by the subscription. In such case there is no contract formed. The subscriber is released when the corporation is formed for a greater or less amount of capital stock than agreed upon. Baker v. Ft. Worth Board of Trade, 8 Tex. Civ. App. 560, 28 S. W. 403; Bohn v. Burton-Lingo Co., 175 S. W. 173; Owensboro, etc., v. Miller, 130 Ky. 310, 113 S. W. 423; Newport Cotton Mill Co. v. Mims, 103 Tenn. 465, 53 S. W. 736; Fletcher's Cyclopedia Corporations, vol. 2, § 524. In this case the corporation formed had no interest in the mine at Webb City. The lease of the mine had not been assigned to it by Wrather and Rice. It was for capital stock of $125,000 more than had been agreed to be organized. This certainly did not conform to any agreement made, and was not a discharge of appellant's obligations to pay the note. Taking the theory of appellants, if the parties ever reached an agreement in this case it was really an agreement to subscribe for stock in a corporation when organized for a specified amount, upon specified property. It was not such as to make appellee a stockholder in the corporation. The contract was executory in its nature, and if appellee did not comply with his contract it only gave appellants a remedy in an action for damages. If the appellants did not comply with their agreement, and organize a corporation in accordance with the understanding, they could not recover on the contract the agreed price; in other words, they breached their contract and are not entitled to a credit on their note. Fletcher's Enc. Corp. vol. 2, p. 530. It is insisted by appellants they delivered to appellee stock in the corporation, which he accepted as a satisfaction of the agreement. This is denied by both appellee and his wife. It is to be noted while the stock book was procured and possibly some of the stock filled out, none of which was delivered to any of the stockholders, according to the appellants, save and except to Parks, which they say was delivered to his wife, who redelivered it to J. D. Wrather to hold for her husband. In the first place, this corporation when organized, and when the certificate was issued, had no assets, no money paid in; the mine of Webb City was never transferred to it, and it is not shown to have ever been its property. The certificate represented nothing of value. It was wholly without consideration. There was therefore a failure of consideration for a credit on the note, if in fact one was made, with the consent of appellee. Fletcher's Enc. of Corporations, vol. 528; Commonwealth, etc., v. Curry, 183 S. W. 1; Le Master v. Hailey, 176 S. W. 818. It is insisted that appellee recognized a satisfaction of his debt when he attended a meeting in which he was requested to resign as director and surrender his stock. He did this, and his stock, as well as all other shares then written up, was at that time destroyed. By agreement then made the evidence of his interest was destroyed. He did not have an interest in the mine assigned to him. The parties stood practically as if nothing had been done. The company of which they had made him a director had nothing, and he was no longer a stockholder or director in this company, all of which was water and wind. An agreement was entered into with the Masterson interest to consolidate two properties, but this, we think, was never done. Wrather and Rice did not make the assignment of the lease as agreed should be done. Judge Kimbrough was to examine the papers. The evidence indicates, and the court would have been justified in finding, the appellants never furnished the papers as agreed upon. The consolidation was a failure; no stock was ever issued under the consolidation to either Wrather's side or to the Masterson crowd. The evidence indicates that, if stock had been issued to appellee, he would have been entitled to $4,000 or $5,000 under the consolidation. It is shown that he never received any such stock, and it was never offered or tendered him. It is shown, after this attempt to consolidate, the appellants permitted their lease property to forfeit, and all the machinery, etc., to go back to the original lessor. It seems to us appellants never complied with their agreement, if they had one, according to their own testimony. They destroyed the stock issued and never issued any other. They never put the title to the mine in the company, but retained it in their own name. They never assigned to appellee an interest in the mine. The appellee, we think, had the right to accept their failure as a breach, and hold them for the balance due on the note.

[4] The third assignment asserts that appellee is now estopped from asserting the note was not paid by the issuance of stock to him, based on the fact that after learning that J. D. Wrather had indorsed on the note the memorandum of agreement to take an interest in the Webb City mine, that he made no protest as to such indorsement; that he knowingly accepted the stock issued to him

in the corporation, and participated in the company's meeting, and acted as an officer, voting therein, and that he was called on personally at the meeting to determine what should be done with his stock, and that he surrendered it for cancellation, and that he afterwards gave his check for his proportional part to take care of a draft to cover operating expenses of the mine. These acts of the appellee did not induce appellants to fail to do what they had agreed to do; that is, transfer a $2,000 interest in the mine, or to incorporate for $75,000 to work the mine and issue appellee stock therein. These things were not done. They did not assign an interest to appellee in the mine. They had no corporation for $75,000 which took over the property, or to which they had assigned the property. If they issued any stock in the corporation, it was never delivered to any of the proposed stockholders, unless it was to Parks, and this was called in and destroyed, and no other stock was issued in its stead. Appellee should not be estopped from showing these facts. He could show that they had not complied with their alleged contract, either its express or implied terms. The whole record simply shows an effort to organize a corporation and start it as a going concern, which was never in fact accomplished. The mere fact that appellee sought to assist the appellants in such undertaking ought not to charge him with their failure to do what was necessary on their part to launch a corporation. All the things done and said simply show a tentative agreement or acting together to form a corporation. Appellants were required to assign to appellee an interest in the mine or assign such property to a proposed corporation of $75,000 before they were entitled to a credit. They did neither. They were not caused or induced to such failure by anything appellee did or said. Apparently if appellant's evidence is true, appellee lent them a willing hand in everything he could do to further their design to incorporate and take over the property. The title to the mine and machinery was in them. It rested with them to make the proper assignment, which they never did. The corporation never came into possession of the property. This evidently was the reason no stock was issued and delivered. None of the acts caused appellants to change their position for the worse, or cause them to acquire any property or rights but for such acts they would not have acquired, and without which there was no estoppel, either in pais or an equitable estoppel. Grosman Co. v. F. De Witt & Son, 198 S. W. 332; Barclay v. Dismuke, 202 S. W. 364; Edwards v. Dickson, 66 Tex. 613, 2 S. W. 718; Baker v. Ft. Worth Board of Trade, 8 Tex. Civ. App. 560, 28 S. W. 403; Davis v. Allison (Sup.) 211 S. W. 980. This is not an action to enforce the payment of a subscription contract by a corporation, or by the creditors of the corporation to enforce liability against stockholders, where in such cases estoppel is sometimes interposed on the ground of participation in the organization and the like. Appellants were not ignorant of the condition of the proposed incorporation and the facts with reference thereto, and were not induced by the silence or acts of the appellee to perfect the organization, or to do the things necessary to conveying the necessary papers to the corporation, as the evidence clearly indicates they undertook to do. The assignment is overruled.

The fourth assignment is overruled. It is asserted the court erred in excluding the prospectus issued by the Amarillo Lead & Zinc Company. The statement of facts in this case shows this instrument was in fact introduced in evidence and considered as evidence.

[5] The fifth assignment is overruled. This assignment is based on the action of the court in refusing to permit J. D. Wrather to testify that he would have paid the $2,000 on the note when he paid the $3,000 if it had not been for the agreement indorsed on the note made at the time. He did testify, and was permitted to do so, that he could have paid the $2,000 in cash at the time, and that he had sufficient money in the bank to have paid it. He also testified that he told Mr. Parks that to save interest he would pay it. We think the substantial effect of the testimony given was the same as that excluded. There was no injury in excluding the testimony. The issue was as to whether there was an agreement to pay the balance by transferring an interest in the mine or corporation, and was there such payment or transfer? Under the facts of this case the proposed evidence would not have shown an injury as effecting estoppel.

[6] The sixth assignment is based on the admission of testimony by C. E. Gustavus to the effect that he did not know he was a director in the Amarillo Lead & Zinc Company; that he never owned anything in it; never contributed anything in any way to it; had no stock in it; and was surprised when Judge Kimbrough called him by phone, stating he was a director, asking him to resign, etc. The charter for the corporation obtained in Colorado designated Gustavus as a director, and the prospectus published him as such, as it did also Parks. It seems the Wrathers and Rice had called on Gustavus, as an attorney, to procure a charter on this property either in Missouri or Oklahoma, and proposed, or intended, to give him stock for his services. He declined to act in the matter, giving as his reason that he was not sufficiently posted as to the corporate laws of those states to do so or to advise them. The evidence of Parks and his wife shows that they knew nothing of obtaining the charter or being directors

in the corporation. Appellants apparently concede appellee was not consulted about the charter, but do testify that Mrs. Parks knew that her husband was named as a director when the prospectus was being obtained. Appellee testified he did not know with what company he was director when he attended the meeting in which he was called upon to resign as director and surrender the stock which J. D. Wrather says he was holding for him. We think this evidence was admissible as tending to corroborate appellee, and also to show the method and scheme of the appellants in launching this Colorado corporation.

[7] The seventh assignment is overruled. This assignment goes to the action of the court in requiring J. D. Wrather, on cross-examination, to testify to the terms of the lease which he and Rice had purchased on the mine and property in question. He and all parties had been called upon to produce the lease, which they failed to do, denying that they had it. Afterwards, however, J. D. Wrather did produce the lease, and it was introduced in evidence, and it is in the record in full, with all its terms. If there was any error it was rendered harmless by the introduction of the lease. If it had not been produced, as requested, we think, under the facts of this case, appellee was within his rights in requiring appellant to testify as to its terms.

We think there is no reversible error shown, and the judgment will be affirmed.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes